OPINION. Murdock, Jvdge: The Commissioner, in determining the deficiencies against B. D., disregarded the engineering business conducted by Byrne as an individual from December 1,1941, to November 16,1942, and added the net income of that business to the income of B. D. for 1941 and 1942. The Commissioner determined a deficiency against Byrne, Inc., for the period November 16, 1942, to August 31, 1943, after Byrne had transferred that business to Byrne, Inc., but also disregarded the existence of the latter corporation, disregarded its fiscal year accounting periods, computed its net income on a calendar year basis for the short period in 1942 and all of 1943, and added the amounts thus determined to the income of B. D. for the years 1942 and 1943. The only explanation given was that of the revenue agent that J. I. Byrne, Consulting Engineer, was a legal fiction and that Byrne, Inc., should be disregarded. No provision of the Code is referred to in the notice of deficiency or in the revenue agent’s report for the action taken, but the Commissioner in his brief relies on sections 45 and 22 (a). This Court has heretofore held that section 45 does not authorize the addition of the net income of one corporation or business organization to that of another and was not enacted to consolidate two organizations for tax purposes by ignoring one completely. Chelsea Products Corporation, 16 T. C. 840; Cedar Valley Distillery, Inc., 16 T. C. 870. Cf. Seminole Flavor Co., 4 T. C. 1215. The Commissioner contends that the agreement between B. D. and ■Byrne dated December 1, 1941, and likewise the agreement involving Byrne, Inc., dated November 16, 1942, were mere shams which should be disregarded for tax purposes, and all of the income reported by Byrne and Byrne, Inc., was in fact earned by B. D. and should be taxed as income of B. D. under section 22 (a). He does not seek to tax the income of Byrne, Inc., to Byrne. It has been held that a corporation can be disregarded under some circumstances and the income taxed to the individual owner thereof or to another corporation under section 22 (a). Higgins v. Smith, 308 U. S. 473; Gregory v. Helvering, 293 U. S. 465; Crown Cork International Corporation, 4 T. C. 19, affd., 149 F. 2d 968. However, the Commissioner would disregard an individual and tax his income to a corporation as if the individual did not exist. Byrne was no fiction. He originated, developed, and was responsible for the success of the business of designing, engineering, and selling. He first formed a corporation and transferred the designing and engineering business to it. The manufacturing and selling was done by others under contracts. Then the corporation undertook some of the manufacturing and all of the selling. Later, Byrne decided it would be advisable to restrict the corporation to manufacturing while he would be responsible personally for all other activities. Just as he had a right to combine some and later all of the various phases of the business in one corporation, so he had a right to separate them and carry on some as an individual. Buffalo Meter Co., 10 T. C. 83. He had good and sufficient reasons for his acts, if any such reasons were necessary in order to justify his separation of the manufacturing from the rest of the business and to prevent his earnings from his personal activities from forever being tied up with those of the corporation as corporate earnings. Cf. Buffalo Meter Co., supra. The record shows that the change was not made merely to avoid or evade taxes, and any tax saving which might possibly result was not one of the main considerations. Byrne was not much interested in the manufacturing business. His patents did not belong to and he did not want them to belong to the corporation engaged in manufacturing. Improvements or new inventions might be developed from the designing and engineering activities and he did not want the corporation engaged in manufacturing to have any claim to them. He had some thought of transferring control of the manufacturing company to some of its employees who had nothing to do with the designing and engineering aspects of the business. Also, he felt that the compensation for his personal services should be larger than the amount he was receiving as salary from the corporation and larger than he thought the corporation should pay. He actually separated the manufacturing business from the designing, engineering, and selling business and thereafter personally carried on the latter business until November 16, 1942. There was no sham or unreality about the separation. B. D. did no selling, designing, or engineering work at any time material hereto after November 30, 1941, and did not earn the income here in controversy which the Commissioner has taxed to it. The Commissioner has not cited any case which supports his disregard of Byrne and Byrne, Inc., as the earners of the income in question. The various phases of the business were closely related and Byrne, who dominated all of the activities, could have done about as he pleased. However, the manufacturing was kept separate from the other activities and the earnings were accounted for separately after November 30, 1941. Furthermore, the evidence indicates that the manufacturing business took its fair share of the earnings; the designing, engineering, and selling business received its fair share; and no profits were shifted by overcharges or undercharges, so that the Government has nothing to complain about in those respects. The only question is whether Byrne and Byrne, Inc., are to be wholly disregarded. Byrne was under no obligation to arrange his affairs and those of his corporations so that a maximum tax would result, and the income earned by him and by Byrne, Inc., in actually carrying on the designing, engineering, and selling' business was not taxable to B. D. Chelsea Products Corporation, supra; Cedar Valley Distillery, Inc., supra; Seminole Flavor Co., supra; Koppers Co., 2 T. C. 152; Buffalo Meter Co., supra; Miles-Conley Co., 10 T. C. 754, affd., 173 F. 2d 958; Moline Properties, Inc. v. Commissioner, 319 U. S. 436. The Commissioner’s contentions that Byrne’s earnings as a sole proprietor should be taxed to him as dividends from B. D., B. D. should not be allowed a deduction for compensation of Byrne in excess of $40,000, and one-half of the amounts which Byrne received from Byrne, Inc., for his patents were dividends from B. D., all fall with the holding on issues 1 and 2. It now appears that Byrne did not receive any of the controverted items from B. D. except such amounts as were due him for services rendered by his separate business. The Commissioner conceded that one-half of the payments from Byrne, Inc., to Byrne for the patents represented long term capital gains. Byrne properly reported the entire amount of those payments as long term capital gains. Adjustment will have to be made for renegotiated excessive profits erroneously treated as if they affected B. D. Issues which were raised in the alternative in case the Court held for the Commissioner on issues 1 and 2 require no discussion. The Commissioner, by amended answer, alleges that he erred in allowing B. D. deductions for the years 1941 to 1946, inclusive, for royalties paid to members of Byrne’s family. He did not determine deficiencies against B. D. for any year after 1943 and no good reason appears for deciding whether B. D. is entitled to deductions for any year after 1943 except 1945 from which a carry-back is claimed. Furthermore, he has the burden of proof and he has failed to prove facts and to advance any sound reason for disallowing whatever deductions were claimed. If parts of the royalties were not payable to members of Byrne’s family, then, as the Commissioner has alleged in other portions of his amended answers, they were payable either to Byrne or to Byrne, Inc., as sole owner of the patents, so that under no circumstances is there any merit to the contention of the Commissioner that B. D. was not entitled to deductions for the full amount of royalties paid. However, he has failed to sustain his allegations that the royalty payments to Byrne’s wife and daughters were taxable to Byrne or •were taxable to Byrne, Inc., for any years involved in this case. No issue is raised in regard to royalties due Byrne, Inc., from B. D. if the two are separate taxpayers. The next question has to do with deductions for amortization of patents. An argument of the Commissioner in regard to deductions for amortization of the patents if the income of Byrne, Inc., is to be combined with that of B. D. needs no discussion in view of the holding against combination of the income. The Commissioner, by an amended answer, alleged that if Byrne, Inc., is recognized as a separate taxpayer from B. D., then he erred in allowing Byrne, Inc., deductions for amortization of the patents computed on a basis in excess of $150,000 for the period November 16, 1942, to August 31, 1943, and in excess of $147,750 for the fiscal year ended August 31,1945. He has failed to prove that the patents were worth less than $300,000 when sold and he has failed to sustain his burden of proof that the basis of the patents in the hands of Byrne, Inc., was less than cost. The evidence shows, on the contrary, that Byrne, Inc., agreed to pay $300,000 and paid $295,500 for the patents which were worth at least $300,000 and that finding disposes of the issue with respect to deductions for amortization of the patents. The Commissioner made a number of adjustments in the case of B. D. upon the theory that its accounting for the items upon a cash method did not clearly reflect income and they should have been ac-erued. These adjustments are all considered together under issue §, Actually the adjustments, for .capital stock taxes benefited the peti--•tioner since the amount which he held accruable for each year is largey than the amount deducted as paid within the year. B. D. attempted ,to meet all of these adjustments by proving that it properly, used a cash receipts and disbursements method of accounting and did not accrue any of the items. The general rule is that net income'shall' be computed in accordance with the method of accounting regularly employed in keeping the boobs of the taxpayer, but if the method employed does not clearly reflect the income, the computation shall-bp made in accordance with such method as in the opinion of the Commissioner does reflect the income. Section 41. Two methods of accounting are generally recognized for income tax purposes, One.,is the cash receipts and disbursements method under which items are deducted only when paid. The other is an accrual method under which obligations must be accrued and deducted when they- are incurred. Section 43. Both parties agree that B. D. used a hybrid method which involved inconsistency. If that method was more like a cash method than it was an accrual method, then adjustments would be in order to make it conform completely to a cash method, but if it was more like an accrual method, then the adjustments made by the Commissioner must stand. Bartles-Scott Oil Co., 2 B. T. A. 16; Maine Dairy Co., 4 B. T. A. 375; John F. Cook, 4 B. T. A. 916; Coatesville Boiler Works, 9 B. T. A. 1242; Schram v. United States, 118 F. 2d 541; Hygienic Products Co., 37 B. T. A. 202, affd., 111 F. 2d 330. The petitioner has failed to show that the method which it used more nearly resembled a cash method than an accrual method. The evidence shows that it more nearly paralleled an accrual method. The Commissioner did not err in disallowing deductions for taxes paid, in allowing deductions for taxes which were incurred and should have been accrued, and in accruing other nondeductible taxes for the purpose of computing the excess profits credit based upon invested capital. The law requires that amounts determined to be excessive profits for a year under renegotiation be eliminated from income of that year in determining the tax credits to be deducted before the remaining excessive profits must be refunded. Likewise, the amount of excessive profits determined for any year had no place in accumulated earnings as of the close of that year. If B. D. is entitled to any carry-back from 1943 to 1941, it will be apparent in the settlement under Rule 50. The parties have stipulated that they will take the report of the revenue agent as their starting point in computing any carry-back from 1945 to 1943 to which B. D. may be entitled. It would thus appear that the excess of deductions allowed over gross income as shown on B. D.’s return for 1945 would have to be reduced by $10,131.58, disallowed by the revenue agent and not in controversy herein. Also, the carry-back would not include the 1944 excess profits taxes paid in 1945 since they should have been accrued in 1944. Byrne, Inc., claims that it is entitled to a net operating loss deduction for the period November 16,1942, through August 31,1943, based on a net operating loss carry-back from its fiscal year ended August 31, 1945. A net operating loss is defined as the excess of deductions allowed over the gross income, with certain exceptions, one of which allows as an additional deduction the amount of excess profits tax “paid or accrued within the taxable year.” Section 122. . The income tax returns of Byrne, Inc., for. its fiscal year ended August 31, 1945, were introduced in evidence without objection. The deductions thereon exceed the gross income by $72,819.94. The Commissioner under other issues has failed to sustain his burden of showing either that Byrne, Inc., was taxable with royalties paid by B. D. to Byrne’s wife and daughters for 1945 or was not entitled to a 1945 deduction claimed for amortization of the patents which it acquired from Byrne..' The returns, under the circumstances of this case, may be taken as prima facie proof of the amount by which the deductions allowed exceeded the gross income. The petitioner claims that that excess should be. increased* by $132,858.06, representing excess profits taxes for its fiscal year ended August 31,1944, which were paid in its fiscal year ended August 31,1945. It alleged in its petition, to support that claim, that it kept its books and filed its returns upon the basis of cash receipts and disbursements. The Commissioner denied that allegation in his answer and the petitioner has attempted to prove the allegation. Both parties agree that the system of accounting used by Byrne, Ipc., did not conform either to the cash receipts and disbursements system or to an accrual method, but was a combination of both. The use of a hybrid system is not countenanced by the Code, and where such a system is used, adjustments are made to make it conform with the one which it most closely resembles which will clearly reflect income. See cases cited above. Thus, it was incumbent upon the petitioner to show that its system was more like the cash receipts and disbursements method of accounting than it was like an accrual method. This it has failed to do and, as a consequence, it has failed to show that it is entitled to deduct the excess profits taxes for 1944 in computing the 1945 carry-back. It did not owe any excess profits taxes for 1945 and did not accrue any.- Thus, its carry-back is limited to $72,819.94. Decisions will be entered under Rule 50.