Rolland Motor Co., Inc. v. Commissioner.
Rolland Motor Co. v. Commissioner
Docket No. 30189.
United States Tax Court
1953 Tax Ct. Memo LEXIS 370; 12 T.C.M. (CCH) 119; T.C.M. (RIA) 53049; February 13, 1953
*370 Income: Separate entities: Sole proprietorship and corporation: Section 22 (a): Section 45. - Net income reported by a substantial stockholder of a corporation from a sole proprietorship organized by him to take over the truck sales end of the corporation's business held not properly includible under Section 22 (a) or 45 in the income of the corporation when the two businesses were conducted separately and books accurately reflected income of each. William R. Frazier, Esq., and James P. Hill, Esq., for the petitioner. Ralph V. Bradbury, Jr., Esq., for the respondent. *371 TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies of $689.98 in declared value excess profits tax and $19,217.39 in excess profits tax for 1942 against the petitioner. Several adjustments made by the respondent are uncontested and can be reflected in a Rule 50 computation. The issue to be decided is whether respondent properly determined that the petitioner is taxable on net income of $8,361.80 realized on the sale of trucks made by an individual proprietorship owned by the petitioner's president during 1942. Respondent claims authority for this action under section 45 and section 22(a). Findings of Fact The petitioner is a corporation organized in 1937 under the laws of Connecticut with its principal place of business in East Hartford, Connecticut. The returns for the period involved were filed with the collector for the district of Connecticut. Walter P. Rolland organized the petitioner and during 1942 he held 32.24 per cent of its stock and his wife Jane held the remainder. Walter was president and treasurer of the petitioner. The purpose of organizing the petitioner was to take over and operate the *372 Hartford factory branch of General Motors Truck Division. This business was financed with $3,500 furnished by Walter and approximately $30,000 advanced by the General Motors organization. In 1937 the petitioner was granted a selling agreement franchise by General Motors Truck and Coach Division of Yellow Truck & Coach Manufacturing Company, hereafter called General Motors. This franchise gave the petitioner the right to sell General Motors trucks with exclusive rights on certain models, parts and accessories in a specified territory. In addition, the petitioner also engaged in an extensive service and repair business. On January 12, 1942, General Motors cancelled the franchise given to the petitioner at Walter's request and executed substantially the same agreement with him individually doing business as Rolland Motor Sales Company, a sole proprietorship. The principal reasons for cancelling the selling agreement with the petitioner and reexecuting it with Walter as an individual were: first, the petitioner's decision to cut its sales force because of the freeze by the Government on or about January 1, 1942, of the manufacture and sale of new trucks; secondly, the petitioner's *373 wish to eliminate certain labor difficulties it was experiencing on back wage claims filed by former employees of its service department by divorcing the truck sales end of the business from the parts and service operation; and third, to take advantage of possible tax savings. Walter invested $3,500 of his personal funds in the sole proprietorship and limited the business of the proprietorship to the sale of new and used trucks. All parts and accessories which he handled individually under the new arrangement were sold by him at cost to the petitioner to enable the petitioner to handle all the parts and service business in connection with General Motors trucks. No money was ever advanced to Walter by the petitioner for use in the truck sales end of the business in 1942. The sole proprietorship employed its own salesmen. The name Rolland Motor Sales Co., the name under which the sole proprietorship was to operate, was registered under the trade name laws of the State of Connecticut and other steps such as the filing of Federal social security returns, the establishment of separate bank accounts, and the setting up of separate books of account by the sole proprietorship were taken. *374 During part of 1942 the petitioner and the proprietorship operated from the same premises and utilized certain common overhead facilities such as secretarial, bookkeeping and telephone services. The cost of these common services was allocated between petitioner and the proprietorship so that each carried its fair share. Walter's wife had no interest whatever in the sole proprietorship. In January 1944 the proprietorship was discontinued. At that time Walter was arranging his affairs for the purpose of retiring from business. Two outsiders were brought in and the entire business of the petitioner and the proprietorship was transferred to a new corporation. The petitioner ceased to transact any business after December 31, 1943, when the new corporation was organized. In the explanation of the adjustment which accompanied the statutory notice of deficiency the respondent stated: "Under section 45 of the Internal Revenue Code, segregation of income received from the sale of motor trucks by Walter P. Rolland, your principal stockholder, is not recognized, and the net profit therefrom has been included in your taxable net income." Ultimate Facts The sole *375 proprietorship was organized and operated separate and apart from the business of the petitioner. For 1942, and except for certain minor uncontested adjustments set forth in the notice of deficiency, the net incomes of the petitioner and of the proprietorship are accurately reflected by the books and records of each business. The income from sales of parts, accessories and services made by the petitioner and the sale of trucks by the proprietorship were accounted for separately and at no time during 1942 were the funds of the two businesses intermingled. No unrelated earnings of the petitioner were shifted to the proprietorship and the proprietorship was not a fictitious or sham organization. The income from the sale of new and used trucks was earned in 1942 by Walter individually and was not income earned actually or conclusively by the petitioner. Opinion The respondent determined the deficiency in this case by lifting out of the income reported by Walter individually the net income reported by Walter from his sole proprietorship and adding that net income to the petitioner's. In so doing it seems to us the respondent has done what this Court in a number of decisions has *376 said could not be done. The result of the respondent's action is tantamount to combining the net incomes of what we have found as a fact to be two separate business entities. In Estate of Julius I. Byrne, 16 T.C. 1234, Judge Murdock said at page 1243: "This Court has heretofore held that section 45 does not authorize the addition of the net income of one corporation or business organization to that of another and was not enacted to consolidate two organizations for tax purposes by ignoring one completely." As authority for this statement Chelsea Products, Inc., 16 T.C. 840 (aff'd (C.A. 3) 197 Fed. (2d) 620); Cedar Valley Distillery, Inc., 16 T.C. 870; Cf. Seminole Flavor Co., 4 T.C. 1215 are cited. We can now add Palm Beach Aero Corporation, 17 T.C. 1169 and Seminole Rock and Sand Company, 19 T.C. 259. The respondent argues that these cases are distinguishable on their facts but we can find no basis for making a distinction. We hold that section 45 confers no authority for the action here taken by the respondent. Nor do we think the respondent's determination is authorized by section *377 22(a). The splitting off of the truck sales end of the business from the servicing and parts business was a logical and reasonable step. To paraphrase Judge Murdock's language in Estate of Julius I. Byrne, supra, Walter had good and sufficient reason for his act, if any such reasons were necessary, in splitting the sales business from the parts and servicing business. These reasons have been made part of our findings of fact and while the respondent would minimize some of them and magnify the tax advantages sought by Walter as outweighing all the rest and thus characterize the arrangement as a sham, we are unable to agree. As the respondent recognizes, it has been held many times that a taxpayer may adopt any form of doing business that he chooses. He is not required to transact business in the form most advantageous to the Government taxwise. We find no basis here for refusing to recognize the sole proprietorship as a bona fide entity. It earned the income which the respondent seeks to tax to the petitioner and we disapprove the respondent's action. Decision will be entered under Rule 50.