HARRY HARTLEY AND CAREY HARTLEY, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47967. Filed November 24, 1954.

---

*R. F. Roberts, Esq.,* for the petitioners.
*W. B. Riley, Esq.,* for the respondent.

OPINION.

BLACK, *Judge:* Respondent has determined that, in order to clearly reflect income for the years in issue, petitioners must take into account the inventories of old and rebuilt motor blocks in computing cost of goods sold of the business carried on under the name of International Motor Rebuilding Company. Sec. 41, I. R. C. 1939.[1]

In *Elsie SoRelle*, 22 T. C. 459, filed June 7, 1954, we said:

Two methods of accounting are generally recognized for income tax purposes— cash receipts and disbursements method and accrual method. It is well settled

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does nearly reflect the income. * * *

that hybrid methods of accounting which do not clearly reflect the taxpayer's income are improper. *Massachusetts Mut. Life Ins. Co.* v. *United States*, 288 U. S. 269; *United States* v. *Anderson*, 269 U. S. 422; *Security Flour Mills Co.* v *Commissioner*, 321 U. S. 281; *Estate of Julius I. Byrne*, 16 T. C. 1234; Regs. 111, sec. 29.41–2.[2] If, therefore, a taxpayer has used a hybrid method which does not clearly reflect income, adjustment must be made to make it conform to that method, cash or accrual, which it most closely resembles, *Niles Bement Pond Co.* v. *United States*, 281 U. S. 357, *Estate of Julius I. Byrne, supra*, * * *

We think it clear from the stipulated facts that respondent's determination is correct under the above quoted principles. The company's accounts for all purchases, sales, and expenses were kept on an accrual basis and inventories were maintained for all new parts and materials used in rebuilding the old motor blocks. It appears that old and rebuilt motor blocks were the only items not inventoried in computing income and, to that extent, the accounting method in use was a hybrid one and did not clearly reflect income. For example, were the company to purchase old motor blocks on credit at the end of the year, then, since all purchases were accounted for on an accrual basis, those blocks would be included in determining the "Purchases" factor of cost of goods sold.[3] However, although on hand at year's end, the blocks would not be included in closing inventory. The net effect would be higher cost of goods sold and a lower income reported for that year—an obvious distortion of the true income picture.

As for the accounting method—cash or accrual—which the method used for the company most closely resembles, we have found that in all respects, except as regards inventorying the old and rebuilt blocks, an accrual method was used. There can be no doubt, therefore, that an accrual method must be used for the company under the above principles and that consistent use of that method requires that inventories of the old and rebuilt motor blocks be taken into account in computing income.

In an attempt to prove that the company's accounts were kept pursuant to a method more closely resembling a cash method petitioners endeavored to show that the company's dollar volume of cash transactions of one kind or another exceeded its dollar volume of credit transactions. Such a comparison is, we think, without value

---

[2] SEC. 29.41–2. BASES OF COMPUTATION AND CHANGES IN ACCOUNTING METHODS.—Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. A method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with reasonable consistency. * * * All items of gross income shall be included in the gross income for the taxable year in which they are received by the taxpayer, and deductions taken accordingly, unless in order clearly to reflect income such amounts are to be properly accounted for as of a different period. But see sections 42 and 43. See also section 48. For instance, in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method. * * *

[3] Cost of Goods Sold normally equals: Opening Inventory plus Purchases less Closing Inventory.

since the important factor here is not the type of transactions experienced, whether cash sales or credit sales, cash purchases or credit purchases, but how those transactions were actually accounted for. Following petitioners' theory to its illogical extreme would compel a finding that a taxpayer whose books were kept in strict conformity with an accrual method must nevertheless be regarded as actually keeping books per a cash method because he had more cash than credit transactions during the particular taxable year. It is obvious that petitioners' theory is untenable.

There is a second equally valid basis upon which respondent's determination should be sustained. Regulations 111, section 29.22 (c)–1, provides, in part, as follows:

> NEED OF INVENTORIES. In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale, * * *

And section 29.41–2 of the regulations provides that in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method. These two regulatory provisions have been in the regulations ever since they first appeared as articles 1581 and 23 (1), respectively, of Regulations 45 (1918). Moreover, the statutory provisions, in sections 203 and 212 (b), Revenue Act of 1918, which they originally interpreted have been repeatedly reenacted without pertinent change and are contained in sections 22 (c) and 41 of the 1939 Code. Consequently, Congressional approval of those regulatory provisions must be inferred.[4] *Securities Allied Corp.* v. *Commissioner*, (C. A. 2) 95 F. 2d 384, certiorari denied 305 U. S. 617; *Elsie SoRelle*, *supra*.

In the instant case the purchase of old motor blocks, their rebuilding and subsequent sale, were "income-producing" factors. The old blocks purchased did "physically become a part of the merchandise intended for sale," i. e., the rebuilt blocks, and the rebuilt blocks themselves were the "finished goods." Therefore, inventories of those old and rebuilt blocks were required, under section 29.22 (c)–1 of the regulations, in computing the company's net income, and section 29.41–2 compelled use of an accrual accounting method. *Herberger* v. *Commissioner*, (C. A. 9) 195 F. 2d 293, certiorari denied 344 U. S. 820; *Securities Allied Corp.* v. *Commissioner*, *supra*.

---

[4] See also Regulations 111, section 29.41–3 (1), whose provisions are similar to those of section 29.22 (c)–1 and first appeared in article 24–(1), Regulations 69 (1926).

Respondent, in determining the inventories of old and rebuilt motor blocks, failed to include any opening inventories for 1949. If there were such opening inventories they must be taken into account by respondent in determining the 1949 net income. *David W. Hughes*, 22 T. C. 1. However, there is no evidence in the record indicating the existence of such inventories and petitioners, therefore, have failed to carry their burden of proving error in respondent's determination. *Burnet* v. *Houston*, 283 U. S. 223.

In their reply brief petitioners suggest that this Court may determine the amount of the aforementioned opening inventories in the subsequent Rule 50 proceedings. Rule 50 of our rules of practice provides for proceedings which are to be "confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues." The rule further states that it is "not to be regarded as affording an opportunity for rehearing or reconsideration." We need not, therefore, consider evidence in a Rule 50 proceeding which, if it existed at all, was in petitioners' possession at the time of the hearing of this cause but which they failed to then present. See *Bankers Pocahontas Coal Co.* v. *Burnet*, 287 U. S. 208; *Ralph L. Patsch*, 19 T. C. 189, affd. (C. A. 3) 208 F. 2d 532.

The Commissioner in his determination of the deficiencies determined that there were closing inventories of blocks and rebuilt blocks December 31, 1949, which became the opening inventories for January 1, 1950. He did not determine opening inventories of blocks and rebuilt blocks for January 1, 1949. Petitioners, in their assignments of error, did not allege that the Commissioner erred in failing to determine opening inventories for January 1, 1949. Moreover, there is no evidence in the record from which we could determine opening inventories on hand January 1, 1949, or even approximate them. Therefore, in our Findings of Fact the only finding which we could make with respect to January 1, 1949, inventories of blocks and rebuilt blocks was a negative one, namely: "There is no evidence that there were any old or rebuilt motor blocks on hand January 1, 1949." Such a finding will not support the construction of any kind of an inventory of blocks and rebuilt blocks on hand January 1, 1949, in a computation under Rule 50.

Petitioners also argue, in effect, that since the same accounting system has always been used for the company and since respondent never objected to it for years prior to the ones in issue, respondent may not now make adjustments for the years in issue. The answer to this is simply stated in *Caldwell* v. *Commissioner*, (C. A. 2) 202 F. 2d 112, 115, as follows:

It is now well settled that the Commissioner cannot be estopped from making a recomputation on the accrual method because he had never before objected to the taxpayer's method of reporting income. * * *

The final issue to be considered is petitioners' liability for penalties resulting from failure to file declarations of estimated tax for the years in issue and from underestimation of estimated tax.[5] Both penalties may apply simultaneously, *G. E. Fuller*, 20 T. C. 308, affd. (C. A. 10) 213 F. 2d 102, and although the penalty for failure to file a declaration will not apply if the taxpayer can show that such failure was "due to reasonable cause and not to willful neglect," "reasonable cause" is no defense to imposition of the penalty for substantial underestimation, *H. R. Smith*, 20 T. C. 663.

For 1949 and 1950, petitioners reported as income from sources other than wages (before any adjustments were made by respondent) $3,912.97 and $42,339.48, respectively. Consequently, they were required, under section 58 (a) (2) of the 1939 Code, to file declarations of estimated tax for those years since their gross income in each year from sources other than wages [6] could reasonably have been expected to exceed $100 and their total gross income to be $600 or more. Petitioners have introduced no evidence showing reasonable cause for failure to file declarations for 1949 and 1950 and are, therefore, liable for the section 294 (d) (1) (A) penalty. They are also liable for the penalty for substantial underestimation under section 294 (d) (2).

*Decision will be entered under Rule 50.*

---

[5] Internal Revenue Code of 1939.

SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

(d) ESTIMATED TAX.—

(1) FAILURE TO FILE DECLARATION OR PAY INSTALLMENT OF ESTIMATED TAX.—

(A) Failure to File Declaration.—In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction tnereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35.

* * * * * * *

(2) SUBSTANTIAL UNDERESTIMATE OF ESTIMATED TAX.—If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), * * * exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. * * *

Regs. 111, sec. 29.294–1 (*b*) (3) (A) : "* * * In the event of a failure to file the required declaration, the amount of the estimated tax for the purposes of this provision [section 294 (d) (2)] is zero."

[6] "Wages" are defined in section 1621 (a) of the 1939 Code as "all remuneration * * * for services performed by an employee for his employer * * *."