Edward Tarr v. Commissioner.
Tarr v. Commissioner
Docket No. 53443.
United States Tax Court
T.C. Memo 1956-194; 1956 Tax Ct. Memo LEXIS 99; 15 T.C.M. (CCH) 1020; T.C.M. (RIA) 56194; August 27, 1956
Victor R. Wolder, Esq., for the petitioner. John M. Doukas, Esq., and Nathan M. Silverstein, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax and additions to tax as follows: Additions under provisions of Sections
Year
Income Tax
293(b)
294(d)(2)
294(d)(1)(A)
1943
$ 3,514.18
$ 1,757.09
none
none
1944
166.00
none
none
none
1945
24,528.59
12,264.30
$1,514.82
$2,272.22
1946
3,642.43
1,821.22
295.71
none
1947
8,051.10
4,025.55
468.04
none
*100 The issues for decision herein are: 1. Whether the statute of limitations as prescribed by section 275(a), Internal Revenue Code of 1939, is a bar to the assessment of a deficiency for 1943. 2. Whether deficiencies were properly determined for the years 1943, 1945, 1946 and 1947. 3. Whether any part of the deficiencies for 1943, 1945, 1946 and 1947 was due to fraud with intent to evade tax. 4. Whether the addition for failure to file a declaration of estimated income tax for 1945 was properly determined, and 5. Whether the additions for substantial understatements of estimated income tax were properly determined for the years 1945, 1946 and 1947. Findings of Fact Some of the facts were stipulated by the parties and are incorporated herein by this reference. We find them to be as stipulated including specifically the facts and figures contained in the net worth statement attached thereto. The petitioner is an individual who resides in New York City, N. Y., and whose income tax returns for the taxable years 1943 to 1947, inclusive, were filed with the then collector of internal revenue for the third district of New York. During the years 1943 to 1949, inclusive, the *101 petitioner was the principal employee of Edward Tarr, Inc., a corporation which operated a photographic studio at 425 Madison Avenue, New York, New York. He owned all of the capital stock of Edward Tarr, Inc. during the years involved herein. The corporation was incorporated under the laws of the State of New York in August 1942. The petitioner was also employed during the years 1943 and 1944 by H. Tarr, Inc., a corporation which operated numerous photographic studios in New York City and which was owned by his father. Petitioner filed a voluntary petition in bankruptcy in 1942 and was discharged of his debts as a bankrupt on July 15, 1943. The taxpayer reported net income for the taxable years as follows: 1943
$3,316.00
1944
4,150.00
1945
6,488.08
1946
9,518.40
1947
3,042.50
During the years 1946 to 1949, inclusive, petitioner was also employed as president of Brookdale Estates, Inc., a corporation which owned real estate in New York City which was organized in August 1946 and which was wholly owned by the petitioner during these years. The petitioner was an inveterate gambler who engaged in crap games for high stakes several times a week throughout *102 the taxable years. While his "specialty was dice", he also was "a pretty good handicapper in horses" during these years. He did not maintain any records of his losses or winnings from any of his gambling activities. Like all gamblers, he sometimes lost money gambling and sometimes won. On certain occasions he won as much as $36,000 and $42,000. At dice games he "bet as high as the limit with the house, which was $2,000." He often gave his wife $50 to $100 when he won in gambling. Petitioner never reported any winnings on any of his income tax returns for 1943 to 1947, inclusive, although he spent some of these winnings on purchases for himself such as for suits of clothes and for winter vacation trips to Florida. Petitioner had a regular checking account in the National City Bank, New York City, in the name of Edward Tarr, having a balance on the 31st day of December in each of the following years as follows: Year
Balance
1943
$8,910.48
1944
931.72
1945
4,684.00
1946
6,380.67
1947
1,710.72
There was a special checking account in the National City Bank, New York City, in the name of Edward Tarr, having a balance on the 31st day of December 1945 of $3,776.84. *103 The savings account in the National City Bank, New York City, in the name of Ann Tarr, petitioner's wife, Account No. 36443, having a balance on the 31st day of December in each of the following years, as hereinafter listed, was, in reality, the property of the petitioner and should be included in his net worth statement: Year
Balance
1942
$ 580.20
1943
1,069.78
1944
1,727.58
1945
3,241.46
1946
3,272.20
1947
2,898.95
Petitioner had a safe deposit box in a New York bank during the taxable years. On the 31st day of December in each of the following years the petitioner owned United States Government Bonds as follows: Year
Face Value
1943
$1,250.00
1944
1,575.00
1946
1,675.00
1947
1,675.00
On December 31, 1945, petitioner had an equity above mortgages in real property located at 1410 Plimpton Avenue, Bronx, New York, in the amount of $14,897.28. On December 31, in each of the years 1942 to 1945, inclusive, petitioner owned stock in Edward Tarr, Inc., which had a book value of $5,400. Petitioner owned the same number of shares of stock in Edward Tarr, Inc., during the years 1946 and 1947 as he owned in prior years. The book *104 value of these shares of stock increased in the years 1946 and 1947 from $5,400 to $13,400, resulting from the capitalization in 1946 of accounts payable to petitioner in the amount of $8,000 representing advances made by him to the corporation from undisclosed sources. The books and records of this corporation were destroyed in a flood prior to the hearing but subsequent to the investigation, at which time they were available to the agents. On December 31, 1946, and December 31, 1947, petitioner owned stock in Brookdale Estates, Inc., which had a book value of $24,300. Brookdale Estates, Inc. owed petitioner $650 for accrued salaries on December 31, 1946, but this amount was not properly includible in his income for 1946. On December 31, 1947, Brookdale Estates, Inc. owed the petitioner the sum of $9,035.71, representing a loan to that corporation. On December 31 of the years 1944, 1945 and 1946 the petitioner owned securities of $12,804.33, $33,545.83 and $20,062.30, respectively. Tarr owed brokers $6,061.41 on December 31, 1944, and $4,406.05 on December 31, 1945. On December 31, 1946, there was due and owing to petitioner from various brokers the sum of $1,073.81. On December 31, 1946, petitioner *105 was indebted to the National City Bank, New York City, for notes payable in the sum of $6,600. Petitioner is entitled to deductions for depreciation of realty owned by him located at 1410 Plimpton Avenue, as follows: 1945
$1,998.38
1946
893.34
The petitioner's living expenses for the year 1943 were $3,500. The taxpayer and his wife and three children, whom he claimed as dependents from 1943 through 1947, lived in a four-room apartment in Washington Heights, New York City, the rent for which was $660 per year. His wife did most of the work in the apartment, although someone did come in one day a week to help out. Tarr gave his wife a weekly allowance during the years 1943 to 1947, inclusive, which did not exceed $35 a week. This was exclusive of the amounts he gave her from his winnings. Petitioner's living expenses for the year 1944 were in the amount of $3,558. Petitioner's living expenses for the year 1945 were in the amount of $7,000. Petitioner's living and other non-deductible expenses for the year 1946 were in the amount of $9,897.07. This amount included the purchase of a mink coat which cost $4,234, which was paid for by one check for $1,000, another *106 for $234, and $3,000 in cash. The petitioner's living and other non-deductible expenses for the year 1947 were in the amount of $7,000. Respondent improperly added to the petitioner's net worth for 1947 the sum of $500.10 which he claimed was owed to the petitioner from Edward Tarr, Inc. This sum represented a loan to the corporation but is properly attributable to the year 1948. A net worth statement submitted to the agents during their investigation listed his cash on hand at that date to be $21,710.72, although his bank account showed a balance on December 31, 1947, of only $1,710.72. The stipulated net worth statement indicates that petitioner disposed of securities worth over $20,000 during 1947. Petitioner had cash on hand as of December 31, 1947, in the sum of $20,000. The petitioner filed consent forms for the years 1944 to 1949, inclusive, which extended the period for assessment of deficiencies for those years until June 30, 1954. The notice of deficiency was sent to the taxpayer before that extended date. Petitioner's books and records for the taxable years were inadequate and did not accurately reflect his income for those years. The taxpayer substantially understated *107 his income in each of the years 1943, 1945 and 1947. The return for the year 1943 was false and fraudulent with intent to evade tax, and at least a part of the deficiency for each of the years 1943, 1945 and 1947 was due to fraud with intent to evade tax. Opinion KERN, Judge: The issues for decision herein are: 1. Whether the statute of limitations as prescribed by section 275(a), Internal Revenue Code of 1939, is a bar to the assessment of a deficiency for 1943. 2. Whether deficiencies were properly determined for the years 1943, 1945, 1946 and 1947. 3. Whether any part of the deficiencies for 1943, 1945, 1946 and 1947 was due to fraud with intent to evade tax. 4. Whether the addition for failure to file a declaration of estimated income tax for 1945 was properly determined, and 5. Whether the additions for substantial understatements of estimated income tax were properly determined for the years 1945, 1946 and 1947. The Commissioner seeks to avoid the bar of the statute of limitations on the assessment and collection of the deficiency determined for the year 1943 on the ground that the income tax return filed for that year was false and fraudulent with intent to evade *108 tax within the meaning of section 276(a). The Commissioner also contends that a part of each deficiency for the years 1943, 1945, 1946 and 1947 was due to fraud with intent to evade tax. He has the burden of proof on these issues. The taxpayer argues that the Commissioner has failed to sustain his burden of proof both as to the allegedly false and fraudulent return for 1943 and also as to the deficiencies for 1943, 1945, 1946 and 1947 being due to fraud with intent to evade tax. The taxpayer contends that since his sources of revenue were well known to the respondent, and since his books and records were adequate, the Commissioner was not justified in using the net-worth-plus expenditures method to compute his income for the taxable years. The taxpayer also claims that the Commissioner improperly included in his net worth determination of income an increase in the book value of the stock of Edward Tarr, Inc., a $650 salary accrual item owing to taxpayer from Brookdale Estates, Inc., a $20,000 cash-on-hand amount in the year 1947, and excessive amounts for the petitioner's cost of living. Also, he contends that the Commissioner failed to give credit in his net worth determination *109 for a $7,500 cash advance received from his father in 1943, a $25,000 gift from his father in 1945 to his three children, his wife, and himself, and a $10,000 loan in 1945 from Sidney Bornstein, which was repaid in 1946. The taxpayer also argues with respect to the additions under sections 294(d)(1)(A) and 294(d)(2) that the burden of proof for showing the failure to file a declaration of estimated tax and for showing substantial understatements of estimated tax is on the Commissioner, and that he has failed to sustain that burden. The Commissioner determined deficiencies in income tax against the petitioner for all of the years 1943 through 1947, inclusive. The Commissioner was justified in resorting to a net-worth-plus expenditures computation of the taxpayer's income partly because the taxpayer's books and records of his corporate activities were inadequately kept, but principally because he maintained no records whatsoever of his extensive gambling activities. The taxpayer frequently used money from the Edward Tarr, Inc. bank account to pay gambling losses. He also deposited gambling winnings in that same account at times when he won. These transactions were not reflected on *110 the books of the corporation. The fact that no records at all were kept of his gambling activities is sufficient in itself to justify the use of the net worth method to determine income. See Harry Gleis, 24 T.C. 941. In order to show that the return for 1943 was false and fraudulent with intent to evade tax, the Commissioner has shown by a net worth computation an omission of over $10,000 in the taxpayer's income for that year. The record shows that gambling was the likely source from which Tarr derived large amounts of income during the taxable year. It shows that he failed to keep either adequate records of his corporate activities or any records at all of his gambling. We do not believe the testimony of either the taxpayer or his wife (who testified only as to his gambling in Florida) to the effect that his gambling losses absolutely or even approximately equaled his winnings during each of the taxable years. They both admitted that his winnings were often in the thousands of dollars, and that he frequently gave to his wife from these winnings $50 to $100 for her own use in the household. He testified that during all of the taxable years he gambled several times a *111 week and often four or six times a week. On occasion he gambled three times a day. It is obvious from the record that petitioner considered his gambling activities as a serious business enterprise rather than social relaxation; he gambled for profit, not for fun. In the absence of any records kept by petitioner of his winnings and losses, and in view of the record as a whole, including petitioner's own testimony and demeanor as a witness, we are unable to accept his testimony that in each of the taxable years his losses evenly or approximately matched his winnings. In view of his enthusiastic continuance in gambling activities and the increase in his net worth over the taxable years, it is more probable that his gambling resulted in substantial net profits. The failure to keep any records of his extensive gambling activities indicates the deliberate attempt to conceal any winnings from the Government, and is evidence of a fraudulent intent. Henry B. Mikelberg, 23 T.C. 342, on appeal (C.A. 3, 1955); Arlette Coat Co. Inc., 14 T.C. 751. The substantial amount omitted from income, the extensive gambling activities of petitioner, and the lack of any records concerning *112 the income derived therefrom, together with the varied explanations of his assets given to the examining agent and our judgment of him as a shifty and unreliable citizen formed by our observation of him while on the witness stand, convince us that the income tax return of petitioner for 1943 was false and fraudulent with intent to evade tax, and that, therefore, the statute of limitations is not a bar to the assessment of a deficiency for that year. Also, the addition to the tax under section 293(b) was properly imposed, since a part of the deficiency for that year was due to fraud with intent to evade taxes. For the same reasons we are of the opinion that petitioner's fraud has been proved in 1945 and 1947 in which years there are large deficiencies in tax and that additions to such deficiencies in tax should properly be made under section 293(b) of the Internal Revenue Code of 1939. The taxpayer made certain contentions that the deficiencies should be less than those determined by the Commissioner for each of the taxable years except 1944, the deficiency for that year being conceded. He has the burden of proof in each such instance. It has been stipulated that the taxpayer is *113 entitled to depreciation for the property owned at 1410 Plimpton Avenue, Bronx, New York, of $1,998.38 in 1945 and $893.34 in 1946, and that the amount of the securities owned by the taxpayer on December 31, 1946, was $20,062.30 instead of $20,572.30. Taxpayer's wife maintained a savings account during all of the taxable years. The money placed in this savings account was derived from the amounts given to her from her husband's gambling winnings and to an undisclosed extent from amounts saved from her household allowance. The Commissioner included this savings account in the taxpayer's net worth because he had been the source of all the money included therein and was in control of its use. The taxpayer insists that at least half of the money in the account should be eliminated from the net worth statement as half of the money came from the cost-of-living allowance given to his wife and would be reflected on the net worth statement in the cost-of-living figures. Upon this item petitioner has failed in his proof. The taxpayer claims that his father advanced him $7,500 in 1943 and made a gift of $25,000 to his three children, his wife and himself in 1945, and that these amounts should *114 be recognized in the net worth statement as non-taxable items so as to lessen the net worth increase for those years. The taxpayer's effort to show that the determination of his income was incorrect in these respects has failed to convince us that these amounts were ever received as claimed. With regard to the $7,500 loan, taxpayer made several conflicting statements; (1) that the amount was loaned to him in 1942 to help him start his new business, in addition to the gift to him of equipment valued at $5,400 which respondent concedes was given to the taxpayer by his father; (2) a written statement that the loan was only $6,000 and occurred in the year 1944; (3) a claim in the petition that he owed $7,500 to his father in 1944, presumably representing the alleged loan; (4) the failure to claim any such liability on certain of the net worth statements presented to the investigating agents; and (5) the admission that the statement in the petition was incorrect. As to this item we accept the Commissioner's determination because of the lack of persuasive proof on the part of the taxpayer to the contrary. A similar situation exists with regard to the claimed $25,000 gift. During the investigation *115 he claimed that the gift was only $15,000. The petition stated that the gift was $25,000. At the hearing, taxpayer testified that he had never given to his wife or children the portion of the gift which belonged to them, yet he testified that the mink coat purchased for his wife in 1946 was purchased with her share of the $25,000 gift. His explanation of why he at different times claimed various amounts for the gift from his father is that he stated the lesser amount "because of the hard feelings between my brothers and sisters." The record does not indicate the causal connection between such "hard feelings" and petitioner's failure to deal truthfully with the representatives of the Federal Government. There is insufficient evidence to show that the taxpayer received a $10,000 loan from Sidney Bornstein in 1945 and that this loan should be recognized in the net worth statement. The only testimony concerning the existence of this loan was given by the taxpayer himself. This particular loan was never asserted by the taxpayer during the investigation of his income tax liability, and the first mention of it was in the petition. The alleged lender was not called as a witness at the hearing, *116 and again we must hold that the taxpayer has failed to sustain his burden in showing error in the Commissioner's determination. Petitioner has objected to the increase made by respondent in petitioner's asset account in the computation of his net worth for the years 1946 and 1947 as a result of an increase in the value of his stock in Edward Tarr, Inc., from $5,400 to $13,400. This increase was made as a result of a change in the book value of this stock appearing on the balance sheet of the corporation reflecting the capitalization of loans due to the petitioner from his wholly owned corporation. It appears from petitioner's testimony that in 1946 the corporation was indebted to him on account of advances made by him in the amount of $8,000. This account receivable of petitioner was not listed as an asset of petitioner in the computation of his net worth. The dates of the advances made by petitioner to the corporation and the source of such advances are not disclosed by the record; all we know (and that by the petitioner's testimony) is that the corporation owed him $8,000 in 1946. In that year, on the advice of his accountant, the corporation gave him its check for $8,000 in payment *117 of this debt, he then endorsed the check and deposited it in the account of the corporation, an entry was then made on the books of the corporation showing the elimination of accounts payable in this amount, and the book value of its stock was accordingly shown to be $13,400. Thus, in effect, petitioner changed the form of his asset, the account receivable, into an additional investment interest in the corporation. However, this asset which had not previously appeared in the schedule of petitioner's assets used in the computation of his net worth and which, for all the record shows, may well have come into existence in 1946 by reason of advances made in that year, should properly appear in such computation for the years 1946 and 1947, even though inartistically referred to by respondent as an increase in value of the corporation's stock rather than an additional investment in the corporation resulting from the capitalization of an account payable to petitioner in 1946 in the amount of $8,000, which account payable resulted from advances of monies made by him to the corporation at undisclosed dates from undisclosed sources. The Commissioner determined that the taxpayer had additional *118 income of $650 in 1946 from salaries from Brookdale Estates, Inc. The taxpayer argues that this particular item represented accrued salary owed him by the company and was either (1) reported as income on his 1946 return, or (2) was not includible in his 1946 income because it was an accrual item and he was on the cash basis. We are of the opinion that the taxpayer has overcome the presumptive correctness of the Commissioner's determination on this point. The books of the corporation were not available at the hearing, having been destroyed previously in a flood, and we do not know whether the item reported on the return was actually this particular $650 salary accrual or was $650 of other salary which had been paid to the taxpayer, but we believe that this $650 item was for accrued but unpaid salary which would not be properly included in his income since he was on the cash basis. The taxpayer contends that the Commissioner was in error in including in his cash on hand for 1947 an amount of $20,000. He argues that there is no proof of the existence of this sum other than an unsigned net worth statement which was furnished to the investigators by either taxpayer or one of his accountants *119 in 1951. The taxpayer denied giving this statement to the agents. In this particular statement the cash on hand in 1947 was listed at $21,710.72. The investigating agents checked the taxpayer's bank accounts and noted that the December 31, 1947, balance was $1,710.72. They tried but could not locate the remaining $20,000 in the form of a tangible asset. In questioning the taxpayer about any unexplained increases in his net worth, they were told that if there was any increase it would have come from his gambling activities. However, the possession of approximately this amount in cash by petitioner may also be inferred from his disposition of over $20,000 worth of securities in this year. On this issue we decide that petitioner has failed to show any error in the Commissioner's determination. The taxpayer claims that the Commissioner erred in including in his 1947 net worth an item of $500.10 which was owed to him by Edward Tarr, Inc. A revenue agent testified that this item was taken from the balance sheets of Edward Tarr, Inc. for 1948, which reflected that such a sum was due the taxpayer, and that he assumed the debt arose at an earlier date. The figure also appeared on the net *120 worth statement which the Commissioner claims was produced by Tarr or his accountant in 1951. On that statement this item appears as a loan to Edward Tarr, Inc. in 1948. We are of the opinion that the Commissioner erred in including this amount in taxpayer's income for 1947, and that it should properly be placed in the year 1948, which is not in issue here. The only other items disputed by the taxpayer are the amounts determined by the Commissioner to be his cost-of-living expenses for the taxable years 1944 through 1947. The taxpayer argues that these cost-of-living estimates are too high, and he points, for example, to the erroneous inclusion of several checks made out to cash which he claims were used to pay gambling losses, and also to overstatement of general living expenses. The checks in dispute amounted to $1,400 in 1944, $8,100 in 1947, $6,600 in 1946 and $2,050 in 1945. The taxpayer's testimony in this regard was that these checks represented payments for his gambling losses. On the whole record, but not without doubt, we accept petitioner's testimony on these items. Most of these checks were cashed in Florida where he was very active in his gambling business and were in *121 large even amounts. Since we have found substantial increases in petitioner's net worth over the taxable years, which we ascribe largely to our conclusion that his gambling winnings were in excess of his losses, we feel that his taxable income should be measured by such excess of winnings over losses reflected by the increase in his net worth, without superimposing on this the amount of his losses also. Respondent contends that the taxpayer spent $9,050 for his living expenses in 1945 whereas in his petition the taxpayer claimed he spent only $6,419. This difference is approximately the amount of the disputed checks which we have held should not be included in his living expenses. The only other specific item contested for the year 1945 was $500 spent for a vacation in Florida for the taxpayer's family. This amount, in all likelihood, was spent in 1946, as the testimony more accurately places the vacation in the months of January and February 1946 instead of December 1945. The shifting of this $500 item to 1946 decreases the cost of living for 1945, and consequently, will reduce the deficiency due for that year, but will be included in the cost of living expenses for 1946. The Commissioner *122 determined the cost of living expenses for 1946 to be $18,297.07, whereas Tarr admitted $5,424 as his expenditures in that year. As we have already indicated it is our opinion that respondent erred in including as cost-of-living expenses checks representing gambling losses in the total sum of $6,600. Another item in dispute for 1946 was a mink coat purchased by the taxpayer's wife. He testified that the cost of the coat was only $3,100, but other testimony indicates the actual cost of the coat was $4,234. Respondent also included in his computation of petitioner's living expenses for 1946 the sum of $2,300 paid for a new automobile. In the net worth statement attached to the stipulation of facts the automobile is shown as an asset and its value is stipulated. It is obviously erroneous for the cost of this automobile to be also included in income as a part of petitioner's living expenses. In other respects taxpayer has failed to show error in the Commissioner's determination of his living expenses for the year 1946. For 1947 taxpayer contends that the cost of living was not $15,100 as determined by the Commissioner but was $5,200. He previously admitted to one of the investigating agents *123 that $7,000 would be about the proper figure. The agents added to this amount the $8,100 represented by the disputed cash checks and determined the cost of living for 1947 to be $15,100. Again, the taxpayer claims that these disputed checks represented payments for gambling losses and, as in previous years, we agree with petitioner that they should not be included as a part of his cost of living. The Commissioner's determination of the other cost-of-living expenses of the taxpayer must stand as taxpayer has not presented persuasive evidence to contradict these figures and there is affirmative evidence in the record to substantiate the Commissioner's determination. Except for the $650 accrued salary, the $500.10 loan to Edward Tarr, Inc., the checks representing gambling losses, the expenditure for an automobile, and the $500 vacation expense, we do not believe taxpayer has shown any other errors in the Commissioner's net worth computation of his income. Additions under section 294(d)(1)(A) for failure to file a declaration of estimated tax for 1945 and under section 294(d)(2) for substantial understatement of estimated income taxes for the years 1945, 1946 and 1947 were determined *124 by the Commissioner. The taxpayer has offered no evidence to rebut this determination or to show reasonable cause for the failure to file and, since the burden of proof is on him, these additions will be sustained in amounts, of course, dependent upon the amounts of the deficiencies, if any, ultimately determined after recomputations have been submitted pursuant to this opinion. Harry Hartley, 23 T.C. 353; Rene R. Bouche, 18 T.C. 144; William G. Lias, 24 T.C. 280. Decision will be entered under Rule 50.