Samuel G. Maloof v. Commissioner.
Maloof v. Commissioner
Docket No. 52636.
United States Tax Court
T.C. Memo 1956-114; 1956 Tax Ct. Memo LEXIS 180; 15 T.C.M. (CCH) 571; T.C.M. (RIA) 56114; May 10, 1956
Samuel G. Maloof, 551 West 178th Street, New York, N. Y., pro se. John F. Walsh, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and additions to income tax under certain sections of the Internal Revenue Code of 1939 for the taxable years ended December 31, 1946, to 1951, inclusive, as follows: Additions to Income Tax Under Section
Year
Deficiency
293(b)
294(d)(1)(A)
294(d)(2)
1946
$ 87.00
$ 43.50
$ 22.43
$ 14.94
1947
454.00
227.00
49.25
32.82
1948
708.96
354.48
97.38
64.92
1949
237.35
118.68
44.57
29.72
1950
1,154.52
577.26
139.36
92.91
1951
2,241.77
1,120.89
238.03
158.69
Petitioner alleges that respondent's entire determination is erroneous. The respondent *181 determined that petitioner failed to report all of his taxable income for each of the years involved; that all or a part of each deficiency was due to fraud with intent to evade tax and, therefore, under section 293(b), Internal Revenue Code of 1939, there should be added to the tax 50 per cent of the total amount of each deficiency; and that there should be further additions to the tax under section 294, Internal Revenue Code of 1939, both for failure to file any declarations of estimated tax under subsection (d)(1)(A) and for substantial underestimation thereof under subsection (d)(2). For the years 1946, 1948, 1949, and 1950, the unreported taxable income determined by respondent was determined on the so-called "net worth" basis. For the years 1947 and 1951 the unreported taxable income determined by respondent represented unreported gain from the sale of two parcels of real property. For the 4 years where the unaccounted for income was determined under the net worth method, the respondent conceded at the trial of this cause that he erred in not deducting from such unaccounted for income veteran's disability pensions received by petitioner in 1946 of $559.67, in 1948 of $828, *182 in 1949 of $834, and in 1950 of $900. As a result of this concession, the respondent further concedes that there is no deficiency for the year 1946. By an amendment to answer, respondent claims an increased deficiency for 1948 due to the stipulated fact that he erroneously allowed petitioner three dependency credit exemptions for that year whereas petitioner was entitled only to one. By a second amendment to answer, respondent claims in the alternative that in the event the Court should determine that all or a part of the deficiency for each of the years 1947, 1948, 1950, and 1951 is not due to fraud under section 293(b), Internal Revenue Code of 1939, then all or a part of each such deficiency is due to negligence under section 293(a), Internal Revenue Code of 1939, and 5 per cent of the total amount of each deficiency should be added to the tax. In his brief the respondent further concedes that there is no deficiency for the year 1949; that petitioner's "unaccounted for income" for the taxable year 1950 should be decreased by $1,200; that petitioner is entitled to a deduction for allowable depreciation in the amount of $1,300 in each of the years 1948 and 1950; and that no *183 part of any deficiency for each of the taxable years 1948 and 1950 was due to fraud with intent to evade tax. Findings of Fact Some of the facts were stipulated. The stipulation is incorporated herein by this reference. Petitioner is an individual residing in New York, New York. He filed income tax returns for the years 1946 to 1951, inclusive, with the then collector of internal revenue for the third district of New York. Lillian Maloof is petitioner's unmarried sister. Gabrail Maloof is petitioner's father. Nijmey Maloof is Gabrail Maloof's wife and petitioner's mother. Petitioner's sister Lillian filed income tax returns for the years 1946 to 1951, inclusive, and reported adjusted gross income therein as follows: Adjusted
Year
Gross Income
1946
$2,468.76
1947
1,548.82
1948
1,396.50
1949
2,381.56
1950
3,345.27
1951
2,205.94
Petitioner's father Gabrail filed income tax returns for the years 1948 and 1951 and reported interest income in each of the years of $2,400. He claimed himself and his wife Nijmey as exemptions and since both were 65 years of age or over, he claimed four dependency credit exemptions in each of the years 1948 and 1951. *184 Petitioner paid his father $2,400 in 1948 and 1951 and deducted the amounts as interest paid. Petitioner assisted his father in preparing his father's income tax returns in each of the years 1948 and 1951. During the years 1946 to 1951, inclusive, petitioner received a nontaxable veteran's disability pension from the United States Government in the following amounts: Year
Amount
1946
$559.67
1947
828.00
1948
828.00
1949
834.00
1950
900.00
1951
900.00
Petitioner reported the following income during the years 1946 to 1951, inclusive: Gross Rental
Rental
Net Rental
Adjusted
Year
Income
Deductions
Income
Interest
Dividends
Gross
Income
1946
$ 9,652.00
$ 7,335.65
$2,318.35
$305.00 *
$2,623.35
1947
10,381.80
8,707.41
1,674.49
226.76
$ 300.00
2,201.25
1948
13,129.20
10,023.18
3,106.02
229.20
450.00
3,785.22
1949
10,989.45
7,855.04
3,134.41
231.76
575.00
3,941.17
1950
11,295.90
8,237.28
3,058.62
228.98
1,195.00
4,482.50
1951
13,582.40
12,702.66
879.74
550.70
1,435.70
2,866.14
Petitioner was born in Lawrence, Massachusetts, in 1909. *185 He received a degree in engineering from Northeastern University in 1935. He moved to New York City in 1937. In 1942, he entered the Army and was discharged in April 2, 1946. Petitioner was discharged from the Army at Halloran General Hospital, having been there for a year previously as a patient. Petitioner lived with his father, mother, and sister during the years 1946 to 1951, inclusive. During the taxable years, petitioner's only sources of income were real estate, interest, and dividends. He did not maintain a complete set of books and records relating to his income. Petitioner was first visited by respondent's agent in 1949. The next meeting occurred in March 1952. At the request of respondent's agent, petitioner produced his bank books, bond records, and security records. Petitioner produced no other books or records. He declined to submit a net worth statement. As the result of his investigation, respondent's agent prepared a net worth and estimated cost of living statement for the taxpayer. The respondent determined petitioner's income for the years 1946, 1948, 1949, and 1950 by the use of a statement of the increase in his net worth, plus additions for living expenses. *186 From this amount respondent deducted the total adjusted gross income reported in those years by both petitioner and his sister. The balance represented the "unaccounted for income" which respondent added to the income reported by petitioner. A summary of this statement is as follows: 12-31-45
12-31-46
12-31-47
12-31-48
Assets
Cash
$ 4,816.93
$ 3,071.33
$ 1,328.55
$ 3,308.38
Real estate
26,800.00
26,800.00
19,500.00
19,500.00
Securities
5,850.00
8,682.00
12,309.60
15,887.35
Automobile
345.00
Mortgages Rec.
3,800.00
3,200.00
TOTAL
$37,466.93
$38,553.33
$36,938.15
$42,240.73
Liabilities
Mortgages Pay.
12,817.80
11,300.00
6,600.00
5,300.00
Net worth
$24,649.13
$27,253.33
$30,338.15
$36,940.73
Less net worth previous year
24,649.13
27,253.33
30,338.15
Increase in net worth
$ 2,604.20
$ 3,084.82
$ 6,602.58
Add: Cost of living
3,000.00
3,000.00
3,000.00
Income to be accounted for
$ 5,604.20
$ 6,084.82
$ 9,602.58
Reported by Petitioner and
5,092.11
3,750.07
5,181.72
Sister
Income unaccounted for
$ 512.09
$ 2,334.75
$ 4,420.86
12-31-49
12-31-50
12-31-51
Assets
Cash
$ 3,651.63
$ 9,340.50
$ 6,717.42
Real estate
19,500.00
19,500.00
47,000.00
Securities
20,185.37
25,039.00
29,391.66
Automobile
345.00
345.00
650.00
Mortgages Rec.
2,600.00
2,000.00
10,500.00
TOTAL
$46,282.00
$56,224.50
$94,259.08
Liabilities
Mortgages Pay.
4,800.00
4,400.00
30,458.62
Net worth
$41,482.00
$51,824.50
$63,800.46
Less net worth previous year
36,940.73
41,482.00
51,824.50
Increase in net worth
$ 4,541.27
$10,342.50
$11,975.96
Add: Cost of living
3,000.00
3,000.00
3,000.00
Income to be accounted for
$ 7,541.27
$13,342.50
$14,975.96
Reported by Petitioner and
6,322.73
7,827.77
5,072.08
Sister
Income unaccounted for
$ 1,218.54
$ 5,514.73
$ 9,903.88
*187 In addition to the error regarding the failure to make an allowance for nontaxable veteran's disability pension money received, respondent's agent admitted nine additional errors in the above statement as follows: (1) The amount of cash in the Harlem Savings Bank as of December 31, 1949, should be $1,371.77 rather than $171.77. (2) The amount of cash in The Franklin Savings Bank as of December 31, 1945, should be $302.25 rather than $300. (3) The amount of cash in The Franklin Savings Bank as of December 31, 1951, should be $1,984.55 rather than $1,968.36. (4) The cost of the property at 362 West 123rd Street appearing on the statement as of December 31, 1945, and 1946 should be $7,400 rather than $7,300. (5) The cost of the property at 315 Convent Avenue appearing on the statement for all years except December 31, 1951, should be $13,600 rather than $13,500. (6) The cost of the property at Westchester Avenue appearing on the statement as of December 31, 1951, should be $45,000 rather than $41,000. (7) The mortgage receivable with respect to the property at 362 West 123rd Street as of December 31, 1947, to 1951, inclusive, should be decreased $50, respectively, for *188 each year. (8) The first mortgage payable with respect to the property at Westchester Avenue as of December 31, 1951, should be $18,800 rather than $18,806.72. (9) The purchase money mortgage payable with respect to the property at Westchester Avenue as of December 31, 1951, should be $11,600 rather than $11,651.90. Upon his entry into military service, petitioner transferred his money to his father for safekeeping. Those funds are reflected in the checking account and the savings account in the name of Gabrail Maloof in the total amount of $4,516.93 shown in petitioner's opening net worth. The income of petitioner's sister, Lillian, for the taxable years 1946 to 1951, inclusive, is reflected in the bank accounts and securities accounts in the joint names of petitioner and his sister. Respondent determined petitioner's net income for 1948 and 1950 as follows: 1948
1950
Net income reported by
petitioner
$3,785.22
$4,482.50
Add: Unaccounted for
income
4,420.86
5,514.73
Total
$8,206.08
$9,997.23
Less standard deduction
820.61
999.72
Net income determined
by respondent
$7,385.47
$8,997.51
The respondent now concedes that a depreciation *189 deduction of $1,300 is allowable in each of the years 1948 and 1950. Petitioner purchased a rooming house at 362 West 123rd Street, New York, N. Y., on July 31, 1939, at a cost of $7,400. On January 9, 1947, he sold this property for a total amount of $11,500. This transaction was not reported in petitioner's income tax return for the year 1947. Respondent determined that petitioner should have reported a capital gain on this transaction of $3,854.72, computed as follows: Cost
$ 7,300.00 [1]
Depreciation
3,609.44
Adjusted cost
$ 3,690.56
Selling price
11,400.00 [1]
Capital gain
$ 7,709.44
50% of above
$ 3,854.72
On June 17, 1940, petitioner purchased the rooming house at 315 Convent Avenue, New York, N. Y., for $13,600. This property was sold on February 2, 1951, for the total amount of $22,000. The broker's commission on this sale was $500 and legal expenses amounted to $75. This transaction was not reported in petitioner's income tax return for 1951. Respondent determined that petitioner should have reported a capital gain on this transaction of $9,062.50, computed as follows: Cost
$13,500.02 [2]
Depreciation
9,525.00
Adjusted cost
$ 3,975.00
Selling price
22,100.00 [3]
Capital gain
$18,125.00
50% of above
$ 9,062.50
*190 Respondent determined petitioner's net income for 1947 and 1951 as follows: 1947
1951
Net income reported by
petitioner
$2,201.25
$ 2,866.14
Add: Unreported capital
gain
3,854.72
9,062.50
Total
$6,055.97
$11,928.64
Less: Depreciation
1,300.00
475.00
Balance
$4,755.97
$11,453.64
Less: Standard deduc-
tion
None
1,000.00
Net income determined
by respondent
$4755.97
$10,453.64
Ultimate Findings Petitioner's books were not adequate and did not clearly reflect his income. Petitioner's income was understated in each of the taxable years 1947, 1948, 1950, and 1951. No part of the deficiency for any of the taxable years was due to fraud with intent to evade tax. At least a part of the deficiency for each of the taxable years 1947, 1948, 1950, and 1951 was due to negligence or intentional disregard of rules and regulations but without intent to defraud. There are no deficiencies and no additions to the tax for the years 1946 and 1949. Petitioner's failure to file a declaration of estimated tax for each of the taxable years 1947, 1948, 1950, and 1951 was due to willful neglect. *191 Petitioner substantially underestimated his estimated tax in each of the taxable years 1947, 1948, 1950, and 1951. Opinion ARUNDELL, Judge: The deficiencies determined by the respondent for the years 1946, 1948, 1949, and 1950 were determined on the basis of the so-called net worth method and for the years 1947 and 1951 by adding to the net income reported by petitioner certain unreported gains from the sale of two pieces of real estate. The respondent now concedes that there are no deficiencies for the years 1946 and 1949. Petitioner contends that the respondent was not justified in determining additional "unaccounted for income" for 1948 and 1950 by means of the net worth statement, a summary of which is set out in our Findings. This method has been approved in many cases where a taxpayer's books and records fail clearly to reflect income. Frank Imburgia, 22 T.C. 1002; Estate of W. D. Bartlett, 22 T.C. 1228; Estate of George L. Cury, 23 T.C. 305, 333; section 41, I.R.C. of 1939. The determination of such income by the respondent is presumed to be correct and the burden of disproving it is upon petitioner. See our Rule 32, and Avery v. Commissioner, 22 Fed. (2d) 6. *192 The bank accounts of petitioner were held in his name and that of his sister. He said that his sister's income found its way into such accounts and therefore the respondent deducted the sister's reported income from petitioner's unaccounted for income in making the net worth determination. On the basis of petitioner's statement to respondent that he had turned his money over to his father prior to entering military service, bank accounts totaling $4,516.93 in his father's name were included in petitioner's opening net worth as of December 31, 1945. This, together with the $300 in The Franklin Savings Bank, make up the $4,816.93 set out in the net worth statement above as of December 31, 1945. Petitioner contends, however, that if his income for 1948 and 1950 is to be determined by means of the net worth method, then here should also be included in his opening net worth as of December 31, 1945, cash in the amount of $9,700. Petitioner's testimony regarding this item is vague and indefinite. He testified that around 1941 he sold some stocks for about $9,700 and kept the money hidden because he did not know what would happen in an emergency. He testified that on December 31, 1945, he *193 had the money "hidden in one of my properties;" that on December 31, 1951, "I had none of it;" but he could not tell what became of it in between those two dates. We are not satisfied from the evidence that in addition to the amount of $4,816.93 petitioner also had cash hidden away in the amount of $9,700 or in any other amount. We hold petitioner has not carried his burden to this extent. Petitioner questioned some of the other items in the net worth statement but his testimony in regard thereto is not at all convincing. Respondent's agent, however, testified that he had made nine errors in preparing the net worth statement. These we have set out in our Findings. In the recomputation under Rule 50, the net worth statement should be revised so as to reflect the correction of the nine errors and the revised unaccounted for income for 1948 and 1950 (to the extent that it is different from the amounts determined by the respondent) should be substituted in place of the above amounts of $4,420.86 for 1948 and $5,514.73 for 1950, and the deficiencies for 1948 and 1950 should then be redetermined after making the adjustments for the above conceded amounts of depreciation and nontaxable *194 income. Only one dependency credit exemption should be allowed for 1948. The parties have stipulated the correct cost and selling price of each of the properties sold in 1947 and 1951. At the trial of this cause, petitioner proved and respondent now concedes that in connection with the property sold in 1951 petitioner is entitled to deduct from the stipulated selling price a broker's commission of $500 and legal expenses of $75. Petitioner contends, however, that in addition to the stipulated cost of both properties substantial capital improvements were made to both properties between the date of purchase and the date of sale and that respondent has failed to take such improvements into consideration in determining the gain or loss upon the sale of such properties. Petitioner produced no books, bills, cancelled checks or other documentary evidence in support of his testimony in this regard. It is noted from petitioner's income tax returns for the years 1946 to 1951, inclusive, submitted with the stipulation of facts that for all of these years petitioner claimed and was allowed substantial deductions for such items as repairs, maintenance, plumbing, painting, carpentry, refrigerators, *195 and furniture. It may well be that the alleged capital improvements petitioner claims to have made have already been claimed and allowed as expense deductions. In any event, we hold that petitioner has failed to establish that any error has been committed by respondent in his determination of unreported capital gain from these two transactions other than the above references to cost, selling price, broker's commission, and legal expenses. Those minor errors should be corrected in the recomputation to be made under Rule 50. The respondent's concession that there are no deficiencies for the years 1946 and 1949 carries with it the elimination of the fraud issue for those years. Respondent also concedes that no part of the deficiencies for 1948 and 1950 is due to fraud. He does contend, however, that because petitioner failed to report the capital gain determined in 1947 and 1951 from the sale of the two parcels of real estate in those years, a part of the deficiencies for those years was due to fraud with intent to evade tax and that under section 293(b), I.R.C. of 1939, 50 per cent of the total amount of the deficiency for each year should be added to the tax. "Fraud is a fact to be *196 proven by clear and convincing evidence." Charles E. Mitchell, 32 B.T.A. 1093, 1128. Section 1112, I.R.C. of 1939, provides that "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner." We do not think the respondent has sustained his burden of proving fraud in either 1947 or 1951. In support of fraud, the respondent relies almost entirely upon the fact that petitioner failed to report either of the sales in his returns. Petitioner explained on the witness stand his failure to report the sales as follows: "THE WITNESS: Your Honor, I made no figure. I regret to say I made no figure and no report of it because I didn't know any better. I didn't know how to do it. I went to the - I got all my information, all my information for filing these reports were obtained from the Government itself and at that time I told him that I didn't think I made any profit and I have never taken any amortization. I never took any amortization because I heard of many incidents where landlords took amortization on their properties and years later they found out *197 they had such a tax liability if they sold their property, they were reluctant to sell. I didn't know the difference between a capital gains tax and a normal income tax. I didn't take any of this depreciation deduction. So that's why I claim that I did not make any profit when I sold the premises 362 West 123 Street and the premises 315 Convent Avenue." We do not think that petitioner's failure to report either of the sales was due to any fraudulent intent. Towards the close of the hearing of this cause, the attorney for the respondent seemed to sense the weakness of his case from the standpoint of fraud for he asked leave of the Court to withdraw the witness he had on the stand and stated that "at this time I would like to ask leave of the Court for time to file an amended pleading, an amended answer to claim negligence in the alternative." No further evidence of fraud was introduced. We hold that respondent has failed to prove that any part of the deficiencies for the years 1947 and 1951 was due to fraud with intent to evade tax. The respondent contends that a part of each of the deficiencies for the years 1947, 1948, 1950, and 1951 was due to negligence or intentional *198 disregard of rules and regulations but without intent to defraud and that under section 293(a), I.R.C. of 1939, 5 per cent of the total amount of each deficiency should be added to the tax. This contention for the years 1947 and 1951 is claimed only as an alternative to respondent's main contention for those years that a part of the deficiencies was due to fraud, but we have decided against the respondent on the main contention. The present contention having been raised by an amendment to answer, the burden of proof is upon the respondent. Rule 32; James Nicholson, 32 B.T.A. 977, 989. We think the respondent has met the burden of proof as to negligence. Petitioner's books were not adequate and did not clearly reflect his income. In fact, he could produce no books or records at all in support of his various contentions that he had made substantial capital improvements to the properties he sold in 1947 and 1951 or with respect to the $9,700 he claimed he had hidden away on December 31, 1945, but no longer had on December 31, 1951. Section 54, I.R.C. of 1939, and Regulations 111, section 29.54-1, require a taxpayer to keep books and records sufficient to establish the amount *199 of his gross income and deductions. The failure to keep such books and records, especially in the light of petitioner's education and experience and the amount of time available for his rental business, is sufficient evidence to support our ultimate finding that a part of the deficiency for each of the years 1947, 1948, 1950, and 1951 was due to negligence or intentional disregard of rules and regulations but without intent to defraud. Cf. Leslie A. Sutor, 17 T.C. 64; Elsie SoRelle, 22 T.C. 459, 488. We hold, therefore, that 5 per cent of the total amount of each deficiency should be added to the tax. The respondent determined further additions to the tax for the years 1947, 1948, 1950, and 1951 under section 294(d)(1)(A), I.R.C. of 1939, due to petitioner's failure to file a declaration of estimated tax for each of those years, and also further additions to the tax under section 294(d)(2) for substantially underestimating his estimated tax for those years. The burden of proof to show error on the part of the respondent in this regard is upon the petitioner. Harry Hartley, 23 T.C. 353; William G. Lias, 24 T.C. 280, 322. Petitioner *200 has not presented any evidence on these issues. It follows that the respondent's determination therein must be sustained. The respondent no longer makes similar contentions regarding the taxable years 1946 and 1949, for which years he concedes there are no deficiencies. Decision will be entered under Rule 50. Footnotes
*. Net capital gain.↩
1. Understated by $100.↩
2. Understated by $100. ↩
3. Overstated by $100.↩