CALDWELL v. COMMISSIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVENUE v. CALDWELL.

No. 55, Docket 22376.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1952.

Decided Feb. 18, 1953.

Benjamin E. Shove, Syracuse, N. Y., for petitioner Joseph S. Caldwell.

Helen Goodner, Sp. Asst. to Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., and Ellis N. Slack and John J. Kelley, Jr., Sp. Assts. to Atty. Gen., on the brief), for respondent Commissioner.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

These cross petitions for review bring before us again a question which is recently recurring. It involves the Commissioner's order to a taxpayer to change from a cash receipts to an accrual basis for reporting income, the taxpayer's protest against the resulting increase in his tax for the year of change, and the Commissioner's attempt to include in gross income the accounts receivable on the taxpayer's books at the beginning of the year. We have sustained the order for change in reporting methods, but have required the Commissioner to make deduction of the property held by taxpayer at the beginning of the year. C. I. R. v. Schuyler, 2 Cir., 196 F.2d 85; C. I. R. v. Cohn, 2 Cir., 196 F.2d 1019. We see no reason for departing from these principles under the special circumstances of this case.

The particular dispute now before us involves taxpayer's method of reporting his income from a lumber and builders' supply business of which he was sole proprietor from 1890 until October 31, 1947, when he transferred it to a newly organized family corporation. Taxpayer had always used inventories in calculating his taxable income from this enterprise, but reported only the actual cash received during the calendar year from both credit and cash sales. No question was raised as to this method of reporting charge sales in the numerous examinations of taxpayer's books made by Internal Revenue Agents for years prior to 1947. In auditing taxpayer's return for that year, however, the Commissioner determined that taxpayer's income should have been reported on the accrual, rather than cash receipts, basis. Accordingly, the Commissioner increased taxpayer's taxable income for 1947 by $183,557.15, the amount of the accounts receivable on his books at the time the business was incorporated. This determination made no allowance for accounts receivable outstanding at the beginning of the year.

The Tax Court held that the Commissioner did not abuse his discretion in requiring the change to the accrual method of reporting and hence in adding accounts receivable to the taxable income. But it held erroneous the inclusion of receivables, amounting to $80,000, which were due to credit sales made prior to January 1, 1947. The Commissioner thereupon submitted his Computation For Entry of Decision, to which taxpayer objected because it did not provide for deduction of accounts receivable which had subsequently proved uncollectible. The court overruled this objection and entered judgment in accordance with its prior Memorandum Findings of Fact and Opinion. The taxpayer now seeks review of the decision holding that accounts receivable were properly included in his taxable income, and, if the Tax Court be sustained on this issue, of its failure to permit a deduction for bad debts. The Commissioner in turn challenges that part of the decision which reduced the taxable accounts receivable by the amount of receivables outstanding at the beginning of the year.

We consider first the propriety of the Commissioner's rather belated determination that this taxpayer should have reported his income on the accrual basis—in other words, that he should have reported the income from his sales in the year they were made rather than paid for. The statutory authority for compelling changes in the method of computing income is found in I.R.C. § 41, 26 U.S.C. That section provides that if the method of accounting regularly employed by the taxpayer in keeping his books "does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." As one of the rules of thumb to be used in applying this section, Treas.Reg. 111, § 29.41–2 states that "in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method." There can be no doubt that this provision applies to the case at bar in view of Treas. Reg. 111, § 29.22(c)–1, which requires the use of inventories "in every case in which the production, purchase, or sale of merchandise is an income-producing factor."

Since taxpayer does not challenge this latter Regulation—and, in fact, has always used inventories in computing his income—the primary issue on his appeal is the validity in the present case of Treas.Reg. 111, § 29.41–2. That Regulation was explicitly applied in Herberger v. C. I. R., 9 Cir., 195 F.2d 293, certiorari denied 344 U.S. 820, 73 S.Ct. 17, a case involving a pickle processing and merchandising business, in which the court expressly rejected those cases which might be construed to question the validity of the Regulation; see also Welp v. United States, D.C.N.D.Iowa, 103 F.Supp. 551, reversed on another ground, 8 Cir., 201 F.2d 128. We are disposed to follow these decisions, since we think the reasonableness of the Regulation as applied in the instant case cannot be seriously doubted. The use of inventories in computing income results in stating the expenses of a year's operations in terms of the cost of the goods actually sold during that year. Thus the profit from these operations will be stated accurately only if the income from all sales made during the year is taken into consideration. This requires use of the accrual method of determining income, since the cash receipts method obviously does not reflect the actual sales made during the year where, as in the present case, a substantial part of these sales—from 90 to 95 per cent according to the finding—is made on credit.

The taxpayer argues that these considerations are irrelevant because I.R.C. § 41 requires only that the method used shall reflect his income *clearly,* not accurately. "Clearly," he says, means merely that the taxpayer's books be kept fairly and honestly. In support of this proposition, he cites Osterloh v. Lucas, 9 Cir., 37 F.2d 277, 278, Huntington Securities Corp. v. Busey, 6 Cir., 112 F.2d 368, 370, and several other cases. None of these cases is directly in point, and, insofar as they do construe this statutory language to connote good faith rather than accuracy, we do not consider their interpretation correct in the present context. Indeed, the pertinent

language in the Osterloh case appears discredited even in the Ninth Circuit in view of that court's recent decision in Herberger v. C. I. R., supra. While taxpayer's honesty and good faith have not been in the slightest impugned in the present case, we read "clearly reflect the income" in I. R. C. § 41 to mean rather that income should be reflected with as much accuracy as standard methods of accounting practice permit. The Commissioner thus did not abuse his discretion in recomputing taxpayer's income on an accrual basis, which necessarily involved adding the accounts receivable attributable to sales made in 1947.

 The taxpayer offers some further arguments which can be quickly disposed of. It is now well settled that the Commissioner cannot be estopped from making a recomputation on the accrual method because he had never before objected to the taxpayer's method of reporting income. Niles Bement Pond Co. v. United States, 281 U.S. 357, 362, 50 S.Ct. 251, 74 L.Ed. 901; William Hardy, Inc. v. C. I. R., 2 Cir., 82 F.2d 249, 250; Mt. Vernon Trust Co. v. C. I. R., 2 Cir., 75 F.2d 938, 940, certiorari denied 296 U.S. 587, 56 S.Ct. 99, 80 L.Ed. 415. Nor is there any merit to the taxpayer's rather cryptic contention that the Commissioner altered his tax period from the calendar year to a ten-month basis. It is, of course, true that the income from this lumber business is taxable directly to him only during the portion of 1947 in which he was its sole proprietor; but that reflects only the fact that he transferred his business to the new corporation before the end of the calendar year, not that his accounting period was in any way affected. Under the accrual method, sales made during any part of the year are taxable in that year, and they do not lose their status as income simply because they do not extend over the entire tax period. Finally, the taxpayer's strong reliance on P. A. Birren & Son v. C. I. R., 7 Cir., 116 F.2d 718, is unwarranted. That case involved a *corporation's* income tax liability for accounts receivable obtained in a transfer from an individual who had always reported his income on a cash basis and whose method of reporting was never changed to that of

accrual. The case is therefore clearly inapposite.

 The fact that the Commissioner properly required use of the accrual method of reporting income does not, however, entitle him to include those accounts receivable which arose from sales executed prior to 1947. Hence we agree with the Tax Court that the Commissioner erred in failing to deduct the receivables outstanding on the taxpayer's books at the beginning of the year. These accounts, which the testimony shows with sufficient certainty to have amounted to at least $80,000, in no way represent income for the year here involved and cannot be rendered taxable under the guise of a change in the taxpayer's method of reporting income. We so held only last year in the decisions cited earlier, namely, C. I. R. v. Schuyler, 2 Cir., 196 F.2d 85, involving inventories, and C. I. R. v. Cohn, 2 Cir., 196 F.2d 1019, involving accounts receivable.

 The Commissioner relies on our earlier decision in William Hardy, Inc. v. C. I. R., supra. In the Schuyler case, approaching the earlier case with obvious lack of enthusiasm, we distinguished it as involving a change in the method of keeping the taxpayer's books, not merely a change in the method of reporting income in the taxpayer's return. Subsequent decisions in other circuits have noted this distinction and have limited that precedent to its precise facts. C. I. R. v. Mnookin's Estate, 8 Cir., 184 F.2d 89; C. I. R. v. Frame, 3 Cir., 195 F.2d 166, affirming per curiam 16 T.C. 600. Retention of the Hardy rule as thus limited has not, however, escaped severe criticism. A note on the Schuyler decision in 66 Harv.L.Rev. 187, 188, brands our failure to overrule the earlier case as leading to the adoption of "an illogical limitation on § 41." And Judge Graven in a scholarly opinion for the district court in Welp v. United States, supra, also points out some logical incongruities in the distinction made between the two cases. The earlier decision has now been substantially disavowed in the Eighth Circuit by the very recent reversal of Judge Graven's reluctant adherence to that case in Welp v. United States, 8 Cir., 201 F.2d 128, 133.

The court of appeals there said: "It may be that the Hardy case can be distinguished from the Frame case and from the Mnookin, Schuyler and Cohn cases upon the grounds stated in the Mnookin and Schuyler cases, but we agree with the trial judge that the distinction in principle is difficult to see. * * * [I]t is now clear that the doctrine announced in the Hardy case is not to be understood to mean that, absent fraud or other considerations not now involved, the change in the accounting method used in determining or reporting income can be made the basis for treating as income in one tax year income which actually accrued in another year." We think this a reasonable interpretation of the current status of the law.

But even if we were to turn a deaf ear to the compulsions of logic, the Hardy rule would not be applicable to the case at bar. The Commissioner merely recomputed the taxpayer's income as reported in his return; no change in the method of keeping his books was required. Of course, 1947 was the last year in which the question would arise, since the sole proprietorship was terminated before the end of the year. In any case, however, the Commissioner was able to obtain all the figures necessary for his recomputation of the taxpayer's income from the books and records as they had been kept ever since the business was founded. A change to the accrual method of reporting income thus required no change in his bookkeeping method. Charge sales and payments on these accounts were recorded on individual cards for each customer. The Tax Court found that "[t]here is no specific place to file the old cards and, while most cards for a particular period could be found, it would be impossible to know whether all cards of that period had been found." Nonetheless, the court concluded that the taxpayer's system "clearly reflected accounts receivable as of any date." Since there seems to have been no difficulty in ascertaining the figures necessary for the present litigation, we see no reason to upset this conclusion. The taxpayer had always kept inventories, made periodic allowance for depreciation, and paid all his bills before closing his books for the year so that his year-end accounts did not contain an accounts payable item. It is thus clear that his books could be geared without difficulty or change to the accrual method of reporting income; consequently this case falls squarely under the rule of the Schuyler and Cohn decisions.

There remains then only the question whether the taxpayer is entitled to deduct that part of his accounts receivable which has proved uncollectible. So long as he reported his income by the cash receipts method, there was, of course, no need for an allowance for bad debts, since sales were reported only as payment for them was received. But under the accrual method some such allowance or reserve is standard accounting practice, and is, indeed, necessary to approximate as nearly as possible the actual income from the year's sales. Therefore, even though the taxpayer never made any estimate of the uncollectible accounts receivable on his books, he should be permitted to deduct a reasonable allowance for the bad debts stemming from his 1947 credit sales. In his Objection to Respondent's Computation For Entry of Decision, the taxpayer claims that, of the $183,557.15 of accounts receivable outstanding at the termination of his sole proprietorship, $7,985.45 still remained uncollected in 1951, and he views this amount as uncollectible. He therefore seeks to have the full amount of $7,985.45 deducted from his taxable income for 1947 as bad debts. But even if we accept the taxpayer's figure, for which there is indeed no evidence in the record, it would have to be reduced by the amount attributable to the $80,000 of accounts receivable outstanding at the beginning of 1947, which we have held not to be taxable in that year. Assuming that the $7,985.45 of purported bad debts was evenly distributed over the entire $183,557.15, the amount attributable to $103,557.15—the accounts receivable which will actually be subject to tax—would be $4,505.14. Use of this figure would yield the taxpayer an allowance for bad debts of approximately 4 per cent, which does not appear unreasonable for a business such as his. A full trial is hardly likely to produce any substan-

tial correction of the ultimate results thus obtained. Accordingly, we adopt the tax-payer's calculation as modified and direct that he be granted an allowance for worthless accounts of $4,505.14 on the item of accounts receivable, amounting to $103,-557.15, which is taxable for the year 1947.

On the taxpayer's petition, the decision is therefore modified as stated, and, as so modified, is affirmed. On the Commissioner's petition, the decision is affirmed.