STANFORD R. BROOKSHIRE AND EDITH M. BROOKSHIRE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

VORIS G. BROOKSHIRE AND HELEN M. BROOKSHIRE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57277, 57278. Filed March 18, 1959.

1158

*F. T. Miller, Jr., Esq., Elton B. Taylor, Esq.,* and *F. A. McClene-ghan, Esq.,* for the petitioners.

*Richard C. Forman, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax against the petitioners as follows:

| Petitioner | Docket No. | Year | Income tax |
|---|---|---|---|
| Stanford R. and Edith M. Brookshire | 57277 | 1950 | $15,806.32 |
| | | 1952 | 28,109.88 |
| Voris G. and Helen M. Brookshire | 57278 | 1950 | 15,269.24 |
| | | 1952 | 27,785.06 |

The principal question is whether in 1952, the year in which a partnership changed from a cash to an accrual method of accounting and reporting income it is required to include in taxable income the accounts receivable as of the beginning of that year which were collected in that year, and to reduce the cost of goods sold by that portion of inventory on hand at the beginning of 1952 which had been paid for and deducted prior to 1952.

The year 1950 is before us as a result of an alternative determination of the respondent for that year involving similar adjustments.

FINDINGS OF FACT.

Some of the facts are stipulated and the stipulation is incorporated herein by this reference.

The petitioners, Stanford R. Brookshire and Edith M. Brookshire, are husband and wife, residing near Charlotte, North Carolina. The petitioners, Voris G. Brookshire and Helen M. Brookshire, are husband and wife, residing near Charlotte, North Carolina. Stanford Brookshire and Voris Brookshire are brothers. For the years 1950 and 1952 both couples filed joint income tax returns with the collector of internal revenue at Greensboro, North Carolina.

Engineering Sales Company, hereinafter referred to as the partnership, is a partnership composed of the petitioners, which was organized in 1932. The partnership filed income tax returns for the calendar years 1950 and 1952 with the collector of internal revenue at Greensboro, North Carolina.

The partnership originally operated as a manufacturers' agent, selling mechanical equipment to manufacturing plants on a commission basis, the partnership taking no title to the merchandise, assuming no responsibility for collection of the accounts, and being reimbursed purely on a commission basis.

The books of the partnership were originally set up on a cash receipts and disbursements method of accounting. A cash receipts journal and a cash disbursements journal were maintained with columns for various income and expenses. Monthly profit and loss statements were prepared by bookkeepers based upon the cash receipts and the disbursements. Annual profit and loss statements were prepared on the same basis. The partnership income tax returns for all years prior to 1952 were prepared on the cash basis, and the figures used in computing income were taken solely from the cash receipts journal and the cash disbursements journal. The partnership returns of income and the partnership books were examined by field agents of the Internal Revenue Service for 1948 and certain prior years, and the partnership's practice of accounting and reporting income on the cash method was accepted.

About 1940 an accounts receivable ledger was established as the partnership began to make credit sales on its own responsibility, in addition to earning commissions as an agent. This ledger was kept principally for collection purposes. The partnership recorded therein sales and collections on sales. It also maintained a sales journal in which invoices were listed by number and notations made as to dates of payments on the invoices. The entries in this journal were never totaled. They were used for cross-reference purposes only.

Until about 1943 the partnership's inventory consisted solely of "V-belts," at which time it began to have material from belts left over which was put into inventory. About 1943 the partnership adopted the practice of taking a physical inventory at the end of each year and preparing, for managerial information and occasionally for bank and credit report purposes, a balance sheet with amounts shown thereon for accounts receivable, accounts payable, and inventory. About 1945 the partnership began to make certain purchases for inventory. Prior to April 1951, inventory records were kept on inventory sheets. Thereafter a card system of perpetual inventory records was kept.

Prior to 1952 the accounts receivable ledger, the sales journal, and the inventories were not used in computing or reporting income under the cash method employed by the partnership. Prior to 1952 the partnership maintained no accounts payable ledger.

The usual type of accounts receivable carried by the partnership was "2% cash, net 30." During the years in issue the partnership

had no bad debts with respect to its accounts receivable and there was no instance of a customer taking as much as a year to pay his account.

In the year 1952 a general ledger was set up. Accounts receivable, accounts payable, and inventory existing at January 1, 1952, were set up in this ledger with proper offsetting credits to the partners' capital accounts. When the time came for filing the partnership return for 1952, that return was prepared and submitted on an accrual method of accounting. In such return the partnership did not include in income the amount of the accounts receivable existing as of the beginning of 1952 or the collections thereon during the year. Therein, in the computation of cost of goods sold, it included in opening inventory the full amount of inventory existing at the beginning of the year, including that which had been paid for and deducted prior to 1952.

At no time did the partnership request or receive specific permission from the Commissioner of Internal Revenue to change its method of accounting and reporting income from the cash to an accrual method, as prescribed by the Internal Revenue Code of 1939 and applicable regulations.

The following tabulation shows the amounts of inventory, accounts receivable, commissions earned and receivable, and value of partnership assets as of January 1 of each of the years 1945 to 1952, as shown by financial statements:

| January 1 | Inventory | Accounts receivable | Commissions earned and receivable | Gross assets |
| --- | --- | --- | --- | --- |
| 1945 | $8,890.24 | $8,878.99 | $19,228.93 | $52,530.43 |
| 1946 | 8,263.14 | 17,159.40 | 57,081.83 | 92,216.78 |
| 1947 | 11,575.25 | 16,501.43 | 80,779.18 | 124,475.21 |
| 1948 | 12,710.00 | 26,918.50 | 65,082.42 | 120,813.75 |
| 1949 | 41,120.60 | 39,798.25 | 34,256.64 | 141,328.35 |
| 1950 | 35,272.07 | 7,677.30 | 9,795.33 | 89,412.32 |
| 1951 | 39,725.93 | 48,876.94 | 45,529.16 | 148,280.89 |
| 1952 | 62,679.22 | 32,402.54 | 34,968.36 | 147,485.75 |

The partnership returns show two main sources of income, namely, commissions and sales of merchandise. The amount of gross sales, gross profit from sales, the amount of commissions, and the net income for each of the years 1948 to 1951, inclusive, as shown therein were as follows:

| Year | Gross sales | Gross profit from sales | Amount of commissions | Net income |
| --- | --- | --- | --- | --- |
| 1948 | $356,636.10 | $62,262.49 | $67,032.90 | $68,085.90 |
| 1949 | 281,774.23 | 91,920.60 | 39,069.01 | 78,873.27 |
| 1950 | 314,374.44 | 53,458.25 | 28,799.54 | 25,747.35 |
| 1951 | 408,256.73 | 85,594.20 | 39,865.37 | 67,487.11 |

At least by 1952 the partnership's nature of business had so altered and changed from its previous operations that the cash basis of accounting could not adequately reflect its income. At least by 1952 the purchase and sale of inventorial merchandise had become a major income-producing factor of the partnership.

In the notice of deficiency addressed to each of the petitioners, the respondent determined deficiencies for each of the years 1950, 1951, and 1952 with the following explanation:

> In the partnership return of Engineering Sales Company for the year 1952, the method of reporting income was changed from the cash to the accrual basis. It is held that since 1952 is the year of change the income for this year should be adjusted for the opening inventory and accounts receivable less accounts payable in the net amount of $84,608.50, which represents income not taxed in prior years.
>
> In the alternative, it is held that partnership income for the years 1950 and 1951 should be adjusted to the accrual basis, plus adjustment for the year 1950 for inventories and accrued accounts in the net amount of $41,126.72 at January 1, 1950, representing income not previously taxed.

In explanation of the adjustments made for 1952, the respondent stated:

> By reason of the change cash in the amount of $32,402.54 collected in 1952 from sales made in 1951 was not included in sales reported in the partnership returns for either year. In order to correctly reflect income it is determined that this amount must be added to taxable income for the year 1952 as a necessary adjustment incident to the partnership's change in its method of accounting.
>
> * * * By reason of the change, the merchandise inventory valued at $62,679.22 on January 1, 1952, was deducted from income in the partnership's returns for both of the years 1951 and 1952. In order to correctly reflect income it is determined that partnership is not entitled to the deduction in 1952 of the amount of the previously deducted inventory. As an offsetting adjustment to cost of goods sold it is determined, for the same reason, that the partnership is entitled to deduct the cost, $10,473.26, of merchandise purchased in 1951 but not paid for until 1952, and which was not deducted in its returns for either year. Accordingly, the cost of goods sold as reported in the 1952 return has been disallowed to the extent of the net amount of these adjustments, or $52,205.56.

The respondent determined that the resulting adjusted income of the partnership was taxable in proper proportions to the petitioners.

On June 10, 1955, the petitioners paid the deficiencies so determined by the respondent in the alternative for the year 1951. The petitions filed with this Court relate only to the years 1950 and 1952.

OPINION.

Prior to the calendar year 1952 the partnership, of which the individual petitioners were partners, kept its books and filed its income tax returns upon the cash receipts and disbursements method of ac-

counting. For the year 1952 it changed its method of accounting to an accrual method and filed its return for that year in accordance with that method. It did not request the permission of the respondent to such a change of method, but the respondent accepted this method for 1952. The parties have stipulated that this was the proper method for that year.

However, the respondent determined that as a result of the change of accounting method certain adjustments were necessary. These consisted of including in income for the year 1952 the amounts collected on accounts receivable on hand at the beginning of 1952 which represented sales in the prior year but which had not been included in income for such prior year, and the elimination, from the computation of cost of goods sold in 1952, of the 1952 opening inventory, to the extent such inventory had been paid for prior to 1952 and had been deducted in computing income for the prior year. The net effect of these adjustments was the determination of deficiencies by the respondent against the petitioners for the year 1952. The respondent also determined, in the alternative, that the partnership income for the year 1950 should be computed upon an accrual method, with similar adjustments to those above described for 1952. He accordingly determined deficiencies against the petitioners for the year 1950. This action he concedes is inconsistent with his determination for 1952, but that it was done only in the alternative and merely for the purpose of protecting the revenue.

The petitioners contest the adjustments made by the respondent for both of the years 1950 and 1952. They contend that in earlier years, not later than 1948, the only method of accounting and reporting which could have correctly reflected income would have been an accrual method, and that under the decided cases the respondent is not permitted to make adjustments either in 1950 or 1952 to reflect as income items which properly should have been treated as income in prior years.

Those sections of the Internal Revenue Code of 1939 which bear upon the subject are set forth in the margin.[1] Section 41 provides

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if * * * the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

(a) GENERAL RULE.—The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *

SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.

The deductions and credits * * * provided for in this chapter shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the

that the net income shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer. Thus, in all years up to and including the year 1951, the statute, on its face, required the partnership to report its income on the cash basis. But, say the petitioners, this is premised upon the assumption that the method of accounting employed clearly reflected income, and that the cash method employed by the partnership did not do so. They contend that any distinction made in any of the earlier cases based upon the method of accounting which was *actually* employed in prior years is no longer a factor in view of such court decisions as *David W. Hughes*, 22 T.C. 1; *Welp* v. *United States*, (C.A. 8) 201 F. 2d 128; *Caldwell* v. *Commissioner*, (C.A. 2) 202 F. 2d 112, affirming a Memorandum Opinion of this Court; and *Commissioner* v. *Dwyer*, (C.A. 2) 203 F. 2d 522, affirming a Memorandum Opinion of this Court.

We have carefully examined the cases cited by the parties. There has been much confusion upon the subject and while statements made in some of the cases might seem to support the petitioners' contention, a close analysis of the facts and circumstances in each case discloses that none of the cases involved a situation comparable to that presented here. Here the partnership started out with a purely commission business upon the cash method. Thereafter it did commence selling merchandise, but whether and when this portion of its business became substantial enough to require the use of inventories and a change to an accrual method was a matter which we think would permit of some reasonable latitude. It is possible that either the cash method or an accrual method would reasonably reflect its income. The partnership itself did not see fit to change its method of accounting until 1952. Although prior to 1952 it did have inventories of merchandise and kept memorandum records thereof, such were not used in computing its income either on its books or for purposes of its tax returns. The partnership's records and returns were examined by an agent of the respondent for the year 1948 and prior years. The petitioner Stanford Brookshire testified that the agent at that time stated that it would be a good idea for the partnership to go on an accrual basis, but that he did not state that an accrual basis was required, and the returns were accepted on the cash basis. Brookshire stated that the method was not changed at that time because he did not think it was necessary. The respondent, in accepting the returns

method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *

SEC. 22. GROSS INCOME.

(c) INVENTORIES.—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

up through 1951 as being correct, has in effect accepted the cash method, as employed by the partnership, as correctly reflecting income. The respondent did not, and does not now, question the adequacy of that method for years prior to 1952. In 1952 the partnership voluntarily changed its method of accounting and voluntarily filed its return on an accrual method.

In the case of *David W. Hughes*, *supra*, cited by the petitioners, the situation presented was not analogous to that here involved. There the taxpayer had not maintained in prior years a strict cash receipts and disbursements method of accounting and it did not change its accounting method in the year in question. On the same day that this Court decided the *Hughes* case we also decided the case of *Clement A. Bauman*, 22 T.C. 7, in which we stated in part:

The taxpayers' position that in the changeover from cash to accrual reporting of income, an accrual method must be used throughout in computing income without any effort to bring into account income of a prior year to prevent it from escaping taxation is amply sustained by *Commissioner* v. *Dwyer*, (C.A. 2, 1953) 203 F. 2d 522, affirming a Memorandum Opinion of this Court, and *Caldwell* v. *Commissioner*, (C.A. 2, 1953) 202 F. 2d 112, affirming a Memorandum Opinion of this Court; also by *Welp* v. *United States*, (C.A. 8, 1953) 201 F. 2d 128. The *Dwyer* decision expressly overruled *Hardy* v. *Commissioner*, 82 F. 2d 249, reversing a Memorandum Opinion of this Court, which is relied on by the respondent here. The basis for these holdings is that the authority of the respondent to require a taxpayer to use an accrual basis of reporting income in cases where his books and records are kept on an accrual basis does not include the authority to add to the income for the year of changeover items which were income of a preceding taxable period. See *David W. Hughes*, 22 T.C. 1; *Commissioner* v. *Schuyler*, 196 F. 2d 85, affirming a Memorandum Opinion of this Court. *It should be remembered that this is not a case where the taxpayers have been keeping their books and records on the cash basis and have sought to change over to an accrual basis without securing the consent of the Commissioner to make such a change. If it were that kind of a case, the situation might be different.* As we have already pointed out, petitioners have been keeping their books and records on an accrual basis * * * [Emphasis supplied.]

In the circumstances of the instant case, we are unwilling to say that the respondent's insistence upon the adjustments for 1952 is unreasonable or in contravention of the principles developed in the litigated cases, particularly since the result would not be to include in income of one year that of another year barred by the statute of limitations. But in any event we think the petitioners cannot prevail here since they have not shown that prior to 1952 the partnership's method of keeping its books and filing its returns did not correctly reflect its income. The respondent has accepted the prior years' accounting method and the returns as being correct and we think the petitioners have the burden of showing they were not. The petitioners rest their case in this respect principally on provisions

of Regulations 111,[2] particularly section 29.22(c)–1 to the effect that inventories are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor, and section 29.41–2 to the effect that in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method.

It is true that the character of the business did change to the extent that a part thereof consisted of buying and selling merchandise, and that as a consequence the partnership did have actual inventories of goods on hand, as set forth in the Findings of Fact. But the language of section 22(c) of the Code appears to clearly contemplate that the use of inventories may or may not be necessary in order

---

[2] SEC. 29.22(c)–1. NEED OF INVENTORIES.—In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * *

SEC. 29.41–2. BASES OF COMPUTATION AND CHANGES IN ACCOUNTING METHODS.—Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. A method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with reasonable consistency. See section 48 for definitions of "paid or accrued" and "paid or incurred." All items of gross income shall be included in the gross income for the taxable year in which they are received by the taxpayer, and deductions taken accordingly, unless in order clearly to reflect income such amounts are to be properly accounted for as of a different period. But see sections 42 and 43. See also section 48. For instance, in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method. * * *

The true income, computed under the Internal Revenue Code and, if the taxpayer keeps books of account, in accordance with the method of accounting regularly employed in keeping such books (provided the method so used is properly applicable in determining the net income of the taxpayer for purposes of taxation), shall in all cases be entered in the return. If for any reason the basis of reporting income subject to tax is changed, the taxpayer shall attach to his return a separate statement setting forth for the taxable year and for the preceding year the classes of items differently treated under the two systems, specifying in particular all amounts duplicated or entirely omitted as the result of such change.

A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this section, a change in the method of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions, such as a change from cash receipts and disbursements method to the accrual method, or vice versa; * * * Application for permission to change the method of accounting employed and the basis upon which the return is made shall be filed within 90 days after the beginning of the taxable year to be covered by the return. The application shall be accompanied by a statement specifying the classes of items differently treated under the two methods and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change. Permission to change the method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected. * * *

SEC. 29.41–3. METHODS OF ACCOUNTING.—It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so. * * * Among the essentials are the following:

(1) In all cases in which the production, purchase, or sale of merchandise of any kind is an income-producing factor, inventories of the merchandise on hand (including finished goods, work in process, raw materials, and supplies) should be taken at the beginning and end of the year and used in computing the net income of the year * * *

clearly to reflect the income of a particular taxpayer. And it has been held that the mere fact that there were inventories does not necessarily mean that the cash receipts and disbursements method did not correctly reflect income. *Theodore H. Beckman*, 8 B.T.A. 830, and *Glenn v. Kentucky Color & Chemical Co.*, (C.A. 6) 186 F. 2d 975. As pointed out in the latter case, the use of inventories is a feature to be considered but is not controlling. It is true in the instant case that as of the end of the year 1948 there was a marked increase in the inventory as well as a sizable increase in the amount of accounts receivable. The petitioners state that during the years 1945 through 1951 inventories and accounts receivable represented more than two-thirds of the value of the partnership's assets as of each January 1. This is true only if commissions receivable are included. But in any event we do not see that this proves that the cash receipts and disbursements method did not clearly reflect income during those years. The petitioners have not demonstrated on brief or otherwise the extent of any claimed distortion of income by the method employed in those years. Indeed, the petitioner Stanford Brookshire conceded in his testimony that inventory as great as $62,000 was not a tremendously large factor or item as compared with the partnership's total annual sales, stating that most of the sales were made with shipments direct to the customers instead of to the partnership's stock. The internal revenue agent who made an examination of the partnership's accounting methods for the years 1932 through 1951 was called as a witness by the respondent and testified unequivocally that for all years up to and including the year 1951, the income of the partnership was clearly reflected by the cash receipts and disbursements method. This agent is a certified public accountant and the petitioners concede that he is very well qualified. The petitioners did not present any testimony to the contrary. In this state of the record we cannot conclude and hold that the income of the partnership was not correctly reflected by the method employed in years prior to 1952.

In *Advance Truck Co.*, 29 T.C. 666, affd. (C.A. 9) 262 F. 2d 388, we stated that the statute is designed to see to it that all items of gross income shall be properly accounted for in gross income for some year, and pointed out that under section 42 items of gross income are to be included in gross income of the taxable year in which received by the taxpayers unless properly to be accounted for as of a different year. And in affirming our decision, the Court of Appeals for the Ninth Circuit held that since the taxpayer had in prior years been on the cash method an income tax status was created with respect to the accounts receivable on a cash-realization basis, requiring that collections be included in income in the year of collection, even

though at that time the taxpayer was on an accrual basis. *Goodrich v. Commissioner*, (C.A. 8) 243 F. 2d 686, reversing 25 T.C. 1235, cited by the petitioners, is not to the contrary. The Court of Appeals there recognized that although accounts receivable at the beginning of the year of change may not be put into income of the year of change, the amounts collected thereon in such year constitute taxable income upon collection.

The accounts receivable with which we are here concerned were not taxable in 1951 under the accounting method employed by the partnership, nor would they be taxable in 1952 under the accrual method since they did not come into existence in that year. However, these items attained a tax status under the cash method and must be considered as items of income in 1952 when collected, under the principle of the *Advance Truck* case. Under the method employed by the partnership in years prior to 1952, all amounts collected were treated as income and all amounts paid out, including the cost of goods, were treated as deductible. Accordingly, we hold that the respondent properly included in income in 1952 amounts collected in 1952 on accounts receivable on hand at the beginning of that year. The inventory on hand at the beginning of 1952 which was paid for in 1951 also acquired a similar tax status when its cost was deducted in 1951 under the partnership's method of accounting, and we think the partnership is not entitled to in effect deduct such cost again in computing taxable income for 1952. It has not been shown that the deduction in the prior year was erroneous under the method of accounting then employed. Accordingly, we also approve the respondent's disallowance of such inventory in the computation of cost of goods sold for 1952.

The petitioners contend that the fact that they accepted the alternative determination of the respondent for the year 1951 and paid the deficiency determined requires or tends to require a holding here that no adjustments are to be made for the year 1952. We disagree. In the notices of deficiency the respondent made it abundantly clear that his determination for both 1950 and 1951 was merely in the alternative.

We approve the respondent's determination as to the year 1952; consequently there is no deficiency for the year 1950 as determined by the respondent in the alternative.

*Decisions will be entered under Rule 50.*