T.C. Memo. 1996-534


UNITED STATES TAX COURT


GEORGE KIOURTSIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9283-95.                    Filed December 4, 1996.


<u>Alan E. Rabunski</u>, for petitioner.

<u>Gary W. Bornholdt</u> and <u>Lewis J. Abrahams</u>, for respondent.


MEMORANDUM OPINION


RAUM, <u>Judge</u>:  The Commissioner determined a $2,651 deficiency in petitioner's 1992 Federal income tax.  The issues for decision are:  (1) Whether, pursuant to section 104(a)(4), petitioner may exclude from gross income a $23,094 pension he received from New York City on account of his disability

retirement from its Department of Corrections, (2) whether the Commissioner is precluded from including the New York City pension in petitioner's 1992 gross income where the Commissioner had issued a closing letter accepting as filed petitioner's 1990 return that failed to include in petitioner's gross income the New York City pension payments received in that year, and (3) whether petitioner must include $3,181 of benefits received from the Social Security Administration in gross income. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. The facts have been stipulated.

Petitioner, George Kiourtsis, resided in Astoria, New York, when the petition in this case was filed. He served in the U.S. Armed Forces from August 30, 1966, to August 29, 1969, including 9 months in the infantry in Vietnam. While thus serving in the Armed Forces, petitioner received the National Defense Service Medal, a Parachute Badge, the Vietnam Service Medal, the Combat Infantryman's Badge, the Vietnam Campaign Medal, the Purple Heart, and the Bronze Star Medal.

In 1969, the Veterans' Administration awarded petitioner "a 10 percent service-connected disability" based on the shortening of his right leg due to injuries resulting from active service in the Armed Forces. The Veterans' Administration subsequently increased petitioner's service-connected disability compensation by 10 percent based on an injury to his right ear caused by

exposure to explosions while in active service in Vietnam. The Veterans' Administration subsequently increased petitioner's "service-connected disability" by 30 percent because he was suffering from Post Traumatic Stress Disorder caused by combat-related injuries incurred as a result of active service in the Armed Forces. In February, 1993, the Veterans Administration increased petitioner's service-connected disability compensation for Post Traumatic Stress Disorder from 30 to 70 percent, and he was "granted Individual Unemployability" effective February 1, 1991, meaning that petitioner's disorder was severe enough to render him incapable of working.

In 1987, petitioner was working as a captain in the New York City Department of Corrections and was assigned to Riker's Island. On March 6, 1989, he applied for ordinary disability retirement under the New York City Employees' Retirement System on the basis that he was suffering from Post Traumatic Stress Disorder. On June 8, 1989, he appeared before the Medical Board of the New York City Employees' Retirement System for an evaluation of his application for ordinary disability. The Medical Board Report included the reports of several physicians who diagnosed petitioner as suffering from Post Traumatic Stress Disorder. On October 20, 1989, the Board of Trustees of the Employees' Retirement System accepted the recommendations of the Medical Board and granted petitioner's application for ordinary

disability as provided by the New York City Employees' Retirement System.

On his 1990 U.S. Individual Income Tax Return, petitioner did not include in income the $23,032 New York City pension payments received that year. The IRS sent petitioner an Information Request inquiring why his 1990 return did not include the New York 1990 pension income in the amount of $23,032 reported by the New York City Comptroller. By letter dated March 30, 1993, petitioner responded to that inquiry, attaching a copy of his Report of Discharge from the armed services, a copy of the Veterans Administration's letter granting him Individual Unemployability, and a letter from the New York City Employees' Retirement System granting him ordinary disability retirement. After submitting the foregoing letter, petitioner received a "closing letter" from respondent dated May 7, 1993, which accepted petitioner's 1990 return as filed.

The Commissioner's determination of deficiency for 1992 was based upon two adjustments:

a. The inclusion in gross income of the $23,094 pension received in 1992 by petitioner from New York City.

b. The inclusion in gross income of a portion ($3,181) of the $14,073 in benefits he received from the Social Security Administration in 1992.

Petitioner relies upon the exclusion provisions of section 104(a)(4) as applied to the New York City pension received by him.  He also argues that the Commissioner should be equitably estopped from including the pension in his 1992 gross income because of the "closing letter" in respect of petitioner's 1990 return.  Since the amount of Social Security benefits to be included in gross income depends entirely upon a computation to be made based upon the taxpayer's adjusted gross income[1] petitioner makes no separate argument regarding this adjustment.

1.   Exclusion under section 104(a)(4)

To the extent relevant in this case, section 104(a)(4) provides that "gross income does not include * * * amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the Armed Forces of any country".  Pertinent portions of section 104(a)(4) and related portions of section 104(b) are set forth in the margin.[2]

---

[1] See sec. 86.

[2] Sec. 104.  Compensation for injuries or sickness.

    (a)  In General.

        * * * gross income does not include--

        *    *    *    *    *    *    *

        (4)  amounts received as a pension, annuity, or similar allowance for personal injuries or
                                        (continued...)

The principal case interpreting the application of section 104(a)(4) is <u>Haar v. Commissioner</u>, 78 T.C. 864 (1982), affd. 709 F.2d 1206, 1207 (8th Cir. 1983) "on the basis of * * * [this Court's] opinion."  In that case, the taxpayer had served in the U.S. Air Force and had sustained a hearing disability caused by a war injury.  After discharge from the Air Force he worked a number of years as a civilian auditor for the General Services

_____

[2](...continued)
          sickness resulting from active service in the
          armed forces
          * * *

     *     *     *     *     *     *     *

     (b)  Termination of Application of Subsection
          (a)(4) in Certain Cases.

          (1)  In general.  Subsection (a)(4) shall not
          apply in the case of any individual who is
          not described in paragraph (2).

          (2)  Individuals to whom subsection (a)(4)
          continues to apply.  An individual is
          described in this paragraph if--

               (A)  on or before September 24, 1975, he
               was entitled to receive any amount
               described in subsection (a)(4),

          *     *     *     *     *     *     *

               (C)  he receives an amount described in
               subsection (a)(4) by reason of a combat-
               related injury, or

               (D)  on application therefor, he would
               be entitled to receive disability
               compensation from the Veterans'
               Administration.

Administration (GSA), and was finally retired from GSA on disability because of his hearing disability. He sought to exclude from gross income annuity payments thereafter received from the Civil Service Retirement and Disability Fund. He contended that the Civil Service disability amount should be excluded from gross income, regardless of whether the retirement plan was a military one, so long as the disability pension was paid for an injury incurred during active service. Id. at 866. This Court held otherwise, focusing instead on the provisions of the retirement plan:

> No case has previously considered whether section 104(a)(4) can be applied to exclude from income payments made to persons who retire from nonmilitary employment. Although the ambiguous wording of section 104(a)(4) provides some superficial support for petitioner's position, this is overshadowed by the fact that the Civil Service Retirement Act * * * is not designed to provide compensation for military injuries. 5 U.S.C. sec. 8331(6) defines "disability" to mean the total disability for useful and efficient service in the grade or class of position last occupied by the employee, because of disease or injury. Under this provision, the nature or cause of the disability is irrelevant; all that is taken into consideration is the employee's ability to perform his or her job. Thus, in determining eligibility for disability retirement and the amount of disability annuity payments, no consideration is given to whether the disease or injury arose from military service.

Id. at 866-867 (emphasis added); accord French v. Commissioner, T.C. Memo. 1991-417; cf. Lonestar v. Commissioner, T.C. Memo. 1984-80.

Petitioner contends that the result in his case should be different because, unlike the taxpayer in Haar, he actually received disability compensation from the Veterans Administration. He attempts to distinguish his case from Haar and others following it on the ground that in those cases there was no specific finding that the injuries for which the taxpayer received disability retirement were caused by active service in the Armed Forces. See French v. Commissioner, T.C. Memo. 1991-196; Grady v. Commissioner, T.C. Memo. 1989-55; Tolotti v. Commissioner, T.C. Memo. 1987-13. Since petitioner's disability pension from the New York City Employees' Retirement System was based on the Medical Board Report, which included reports of physicians diagnosing petitioner as suffering from Post Traumatic Stress Disorder, petitioner contends that his pension was received "because of a disability incurred while serving in the military." Haar v. Commissioner, 78 T.C. at 866.

Contrary to petitioner's assertions, the key to the holding of Haar and its progeny is not whether the taxpayer received disability compensation from the Veterans Administration or whether there was a specific finding that the disability was service-related. Haar looked to the retirement plan under the Civil Service Retirement Act, and determined that it was "not designed to provide compensation for military injuries." Id. at 866. In this case, the New York City Employees' Retirement

System is governed by the New York City Administrative Code. The applicable section provides as follows:

> b. If such medical examination shows that any such member referred to in subdivision a of this section <u>is physically or mentally incapacitated for the performance of duty</u> and ought to be retired, the medical board shall so report and the board shall retire such member for ordinary disability * * * .

New York City Admin. Code, sec. 13-167 (1988) (emphasis added). The New York City Administrative Code awards disability retirement because of inability to perform duties, regardless of the cause. Although petitioner could not perform his duties because he was suffering from Post Traumatic Stress Disorder, he was awarded disability retirement because he could not perform the duties of a captain in the New York City Department of Corrections; the specific finding of Post Traumatic Stress Disorder was incidental to the finding that he was disabled. Under <u>Haar</u>, petitioner is not entitled to exclude his pension payments from gross income.

Petitioner further contends, on the basis of a Senate Finance Committee report, that the legislative history of section 104(a) supports his interpretation of the statute. That report states in pertinent part:

> At all times, Veterans' Administration disability payments will continue to be excluded from gross income. In addition, even if a future serviceman who retires does not receive his disability benefits from the Veterans' Administration, he will still be allowed to exclude from his gross income an amount equal to the benefits he could receive from the Veterans'

Administration.  Otherwise, future members of the armed forces will be allowed to exclude military disability retirement payments from their gross income only if the payments are directly related to "combat injuries."

Tax Reform Act of 1976, S. Rept. 94-938, at 139, 1976-3 C.B. (Vol. 3) 49, 177.

Contrary to petitioner's argument, that report supports the interpretation of the statute applied in Haar--that disability payments may be excluded if the pension plan, whether civilian or military, compensates for military injuries.  The payments at issue here, as in Haar, are based upon a civilian pension received by the employee for his inability to do the required work, regardless of whether such inability, as pointed out in Haar v. Commissioner, 78 T.C. at 867, "arose from military service."  Moreover, the report makes clear that Congress was attempting to prevent abuse of the exclusion by military retirees who qualified for disability just before retirement and then engaged in full-time civil employment while receiving an excludable "disability" paycheck.  S. Rept. 94-938, supra at 138, 1976-3 C.B. (Vol. 3) at 176.  To allow petitioner to exclude from income disability payments received from a civilian source, thus in effect setting the stage for being compensated twice for the same injury, would run counter to the Congressional purpose explicitly stated in the committee report upon which petitioner relies.

2.  Equitable Estoppel

Petitioner contends further that equitable estoppel prevents the Commissioner from requiring petitioner to include the New York City 1992 pension payments in his 1992 gross income because he had received a "closing letter" from the IRS accepting as filed his 1990 return which had excluded such 1990 payments from gross income.  The traditional elements of equitable estoppel have been stated to be:  "(1) conduct constituting a representation of a material fact; (2) actual or imputed knowledge of such fact by the representor; (3) ignorance of the fact by the representee; (4) actual or imputed expectation by the representor that the representee will act in reliance upon the representation; (5) actual reliance thereon; and (6) detriment on the part of the representee."  Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982).  And the Court in Graff pointed out that "Although the doctrine of equitable estoppel is not inapplicable to the Federal Government, it has been applied to such Government with caution and only where justice and fair play require it.  Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947); Goldstein v. United States, 227 F.2d 1, 4 (8th Cir. 1955)."

The doctrine of equitable estoppel does not bar the Commissioner from correcting a mistake of law, Automobile Club v. Commissioner, 353 U.S. 180, 183 (1957), absent unfair conduct on

the part of the Commissioner, Edens v. Commissioner, T.C. Memo. 1974-309, affd. 549 F.2d 798 (4th Cir. 1976). The Government has the power to correct mistakes of law because "'Whoever deals with the government does so with notice that no agent can, by neglect or acquiescence, commit it to an erroneous interpretation of the law.'" Graff v. Commissioner, 74 T.C. at 762 (quoting Schafer v. Helvering, 83 F.2d 317, 320 (D.C. Cir. 1936)). Interpreting section 104(a)(4) so as to exclude petitioner's pension payments from income was a mistake of law.

Petitioner contends that the Commissioner should be bound by the 1990 closing letter. However, a "closing letter" is to be sharply distinguished from a "closing agreement" under section 7121, entered into by both the taxpayer and the Commissioner which is binding in accordance with its terms. The "closing letter" is nothing more than the Commissioner's acceptance of a return as filed. And the prior practice of the IRS or the Commissioner's acceptance of a prior year's return does not bar the Commissioner as to later years. Caldwell v. Commissioner, 202 F.2d 112, 115 (2d Cir. 1953), affg. in part a Memorandum Opinion of this Court; Rose v. Commissioner, 55 T.C. 28, 31-32 (1970); Tollefsen v. Commissioner, 52 T.C. 671, 681 (1969), affd. 431 F.2d 511 (2d Cir. 1970); Meneguzzo v. Commissioner, 43 T.C. 824, 836 (1965); cf. Dixon v. United States, 381 U.S. 68, 72-75 (1965); Niles Bement Pond Co. v. United States, 281 U.S. 357,

361-62 (1930).  Moreover, even if it were otherwise relevant here, petitioner has presented no evidence of unfair conduct by the IRS, apart from his bald assertion that he relied to his detriment on the closing letter.  And there is no showing here that the Commissioner has even sought to reopen petitioner's 1990 liability for tax.  We hold that even though the IRS made a mistake of law in respect of petitioner's 1990 return, the Commissioner certainly had the power to correct that mistake as it affected petitioner's 1992 return.

3.   Social Security payments

The Commissioner's inclusion of petitioner's New York City pension in his gross income increased his adjusted gross income. Such increase resulted, without dispute, in an increase in the amount of taxable Social Security benefits petitioner received. As indicated earlier herein, petitioner does not contest this adjustment if, as we have held, his New York City pension is includable in his gross income.

Decision will be entered

for respondent.